# Richmond

COMMONWEALTH OF VIRGINIA v. WYTHEVILLE KNITTING
MILLS EMPLOYEES WELFARE ASSOCIATION.

January 25, 1954.

Record No. 4152.

Present, All the Justices.

The opinion states the case.

*J. Lindsay Almond, Jr., Attorney General* and *Frederick
T. Gray, Assistant Attorney General,* for the Commonwealth.

*Campbell & Campbell*, for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

This case involves the single question of whether the Wytheville Knitting Mills Employees Welfare Association, hereinafter referred to as the petitioner, is subject to the retail merchant's license tax prescribed by § 58-321 of the Code of Virginia, 1950. The trial court held that petitioner was not liable for the tax, and ordered that it be exonerated from the payment thereof for the years 1949, 1950 and 1951, Code, § 58-1134. That order is now before us on a writ of error. Code, § 58-1138.

Petitioner bases its right to relief on the ground that it is a voluntary cooperative organization engaged in selling or dispensing foodstuffs to its own membership without profit or a profit motive. The Commonwealth contends that under the facts hereinafter recited, the petitioner is a retail merchant as defined by Code, § 58-320, and under the provisions of § 58-321, is required to pay the retail merchant's tax therein prescribed.

The facts are not in dispute; but since they are important in determining the applicability of the statutes involved, an agreed statement of the evidence will be fully set out.

On behalf of the petitioner, "Don W. Sterner testified that he was Office and Personnel Manager for the Wytheville Knitting Mills, Inc.; that the Employees Welfare Association of the Wytheville Knitting Mills, Inc. was a voluntary unincorporated organization composed exclusively of employees of the Wytheville Knitting Mills, Inc.; that the Wytheville Knitting Mills, Inc. operates a knitting mill about a quarter of a mile beyond the corporate limits of the Town of Wytheville and about a mile from the post office and business section of Wytheville; that there are no stores or restaurants near the plant of the knitting mill; that prior to 1949, some persons with trucks would come to the Wytheville Knitting Mill plant to sell soft drinks, candy bars, etc. to the employees, but that

this was unsatisfactory and, therefore, in the latter part of 1949, the Wytheville Knitting Mills, Inc. offered to furnish the Employees Welfare Association space in which to operate a canteen for themselves and agreed that no charge would be made for the time of employee or employees operating the canteen; and that such employees would be paid by the Wytheville Knitting Mills, Inc. for their time spent operating the canteen; that pursuant to this arrangement the canteen was opened in 1949, for the sale of sandwiches, soft drinks, candy bars, cakes and pies and milk; that the sandwiches were purchased from Mrs. Crigger and dispensed at exactly the cost paid Mrs. Crigger; that the soft drinks such as Coca-Cola, Pepsi Cola, etc., were dispensed from a coin operated vending machine which would operate only on nickels and dimes, the price charged for the drink; that the candy bars were dispensed at the regular retail price, but were bought at wholesale prices and could be sold for 1¢ less; that the cakes and pies were dispensed at as near the cost price as could be figured; and that the milk was sold in cardboard containers of one-half pint and one pint each; that the one-half pint cartons are purchased for 6¾¢ and sold for 8¢ and the pint containers are purchased for 10½¢ and sold for 12¢. There is no appreciable loss from breakage or spillage; that there was no intention to make a profit on the transactions but that the whole arrangement was operated by the employees for the purpose of providing them a convenient place to secure these articles of food and drink for their lunches.

"During the year 1949, the gross amount received over and above costs of articles dispensed was $71.19; during the year 1950, this figure was $1,796.71; and during the year 1951 was $1,902.46. These amounts passed into the Employees Welfare Association fund, which belongs exclusively to the employees and the amounts were expended for flowers and other like things sent to sick employees, or to the funerals of former employees; prior to the time of the operation of the canteen, 'the hat had been passed' among the employees for items such as these. A substantial amount was spent in 1950

and 1951 for an employees picnic during the summer and a Christmas party in December. Before the canteen was operated, the Wytheville Knitting Mills, Inc. had donated between three and four hundred dollars a year for these affairs, but after the canteen was put in operation, the parties were much more elaborate and between $1,100.00 and $1,200.00 was spent each year on these parties; that since the canteen was organized the Wytheville Knitting Mills, Inc., has made no donation for the parties, the entire cost being borne by the canteen fund. Nothing was sold or dispensed to any person except an employee of the Employees Welfare Association and every employee of the Mill was a member of this Association and every employee had an equal interest in the assets of the Association. The Association is unincorporated and its membership is composed exclusively of the people working at the Wytheville plant of the Wytheville Knitting Mills, Inc.

"The witness offered to testify that the margin of profit charged would not be sufficient to cover an ordinary retail operation; that he had made inquiries as to the profits generally charged by retail stores and that the difference between the price paid and price received for articles in the canteen would not support a retail business. (This evidence was objected to by the Commonwealth and excluded by the court, after the witness stated he had no personal knowledge regarding retail operations.)

"The witness further testified that there was no intention to make a profit on the articles sold and that they were sold just as near cost as could be arrived at by using a whole cent purchase price. There was no intention or purpose to make any profit and if anything was realized upon an abandonment of the canteen, it would be owned equally by each member of the Association.

"The only property of the Association was the inventory which it had on hand plus the funds in bank realized from the canteen operation.

"So far as the witness knew, no merchant had objected to the operation of the canteen and although Wytheville had a Retail Merchants Association, he had received no complaint from this Association.

"For the Commonwealth a State License Inspector, Henry Clay, testified that he had been connected with the State Department of Taxation as an Inspector since the summer of 1951. He had occupied various positions before that with private retailing establishments. Over the objection of the movants he testified that he had been instructed by the State Tax Commissioner to assess a license tax against the Employees Welfare Association for merchant's license based on their sales; that so far as he knew, there was no other canteen being operated as this one was operated but that he was not prepared to say that there were or there were not such canteens at other places, and if so, whether they did or did not pay any license tax.

"The witness also presented a letter which was received as Commonwealth's Exhibit 'A' which revealed that in the opinion of the State Tax Commissioner the Association is liable for the license tax under the statutes as they have been interpreted and applied throughout the years."

Petitioner argues that it makes no sales but rather dispenses its commodities to its members only, and that the relation of buyer and seller does not exist in such transactions. It insists that since it does not operate for profit, and has no profit incentive in the sale or dispensing of foodstuffs to its members for their convenience, it is not subject to the license tax.

The evidence shows that petitioner is actively engaged in the business of buying and selling articles of merchandise as a trader, storekeeper, or shopkeeper. It dispenses its goods only to those who pay for them. This act creates a sale in which petitioner and purchaser occupy a seller and buyer relation. The absolute ownership of the commodity involved passes to the purchaser from the petitioner. A transfer of ownership for a consideration is a sale whether the price paid by the

purchaser be less than, equal to, or greater than the cost to the vendor.

Moreover, the method pursued by the petitioner shows that it realizes substantial monetary profits through sales to its membership. One year it received profits amounting to $1,796.71, and another year $1,902.46. Out of the profits it purchased flowers for its sick members, and staged expensive parties and picnics, the expense of which otherwise would have been required to be borne by the members from their personal funds. Each member of the Association thus became entitled to the benefit or profit from the business conducted. Some probably got more and some got less, dependent upon various circumstances.

The pertinent portion of § 58-320 reads as follows: "The term 'retail merchant,' as used in this article, means every merchant who sells at retail only and not for resale."

Section 58-321 is in the following language:

"Every person, firm and corporation engaged in the business of a retail merchant shall pay a license tax for the privilege of doing business in this State to be measured by the amount of sales made by him or it during the next preceding year."

These two sections control the determination of this case. Section 58-320 is clear and unambiguous. In direct, distinct and unmistakable terms it defines a "retail merchant" as "every merchant who sells at retail only and not for resale." The word "every" includes all. It excludes none. The definition is not dependent upon whether or not the merchant realizes a profit or intends to obtain a profit. If engaged in the business of buying and selling commodities, he "sells at retail only and not for resale," he is a retail merchant under the statute, regardless of the profit motive. The storekeeper or shopkeeper who intentionally or unintentionally sells at cost or at a loss is a merchant as well as one who sells at a profit.

Code, § 58-321 is equally clear and unambiguous. It is by its very terms applicable to "Every person, firm and cor-

poration engaged in the business of a retail merchant * * * ." There are no exceptions here. Its application is not dependent upon whether the merchant realizes a profit or hopes to realize a profit. The license tax is measured by the amount of sales and not by the amount of profit or loss on sales made.

The word "retail" means the sale of commodities in small quantities or parcels. Webster's New International Dictionary, 2d Ed., (Unabridged). Vol. 37A, Words and Phrases, Perm. Ed., pages 167, *et seq.*

A "merchant" in the sense of our tax statutes, "is a dealer in goods, wares, and merchandise, who has the same on hand for sale and present delivery." *White* v. *Commonwealth*, 78 Va. 484, 485. See also Vol. 27, Words and Phrases, Perm. Ed., p. 87.

In *Rockingham Co-Operative Farm Bureau* v. *Harrisonburg*, 171 Va. 339, 198 S. E. 908, we held that since the appellant, a co-operative association, had sold to its members articles of merchandise which it was not authorized to sell under the Virginia "Agricultural Co-Operative Association Act," Code. sec. 13-248, *et seq.*, it was doing a business required to be licensed, and was liable to taxation "as a general merchant, to the extent, at least, of its unauthorized sales." So, in the case now before us, the petitioner is engaged in a business required to be licensed by the State.

It is interesting to note that the State Tax Commissioner, especially charged with the duty of construing and effectuating the provisions of the tax laws in Virginia, stated that the exoneration of the petitioner from the payment of the license tax would be "contrary to the law as it has been interpreted and applied in Virginia throughout the years." This interpretation by the Tax Commissioner is in accord with our view of the statutes here involved.

In *Richmond Food Stores, Inc.* v. *Richmond*, 177 Va. 592, 15 S. E. (2d) 328, at page 597, we quoted with approval a letter of the State Tax Commissioner, in which he took the position that, "Even a charitable corporation, if it engages in

the business of buying and selling merchandise is subject to merchants' license taxation."

The legislature has not exempted charitable organizations engaged in business as retail merchants from taxation, and there is nothing to indicate that it has intended to exempt an association similar to that of the petitioner. The evidence fully justifies the classification of the petitioner as a retail merchant under the definition of § 58-320.

Petitioner, in its brief, has cited certain cases which define a "merchant" as "one who buys and sells marketable commodities for profit." The definition there given must be considered in the light of the statutes and the subject matters there under consideration. The decision in this case turns upon the interpretation which we have placed upon the language of § 58-320, defining the words "retail merchant," (*White* v. *Commonwealth, supra*), an interpretation to which we now adhere.

For the reasons stated, the order of the trial court will be reversed, the application of the petitioner for exoneration from the payment of a retail merchant's license tax denied, and this proceeding dismissed.

*Reversed and final order.*