## CIRCUIT COURT OF FAIRFAX COUNTY

National Rural
Utilities Cooperative
Finance Corporation

v.

Fairfax County
Board of Supervisors

March 15, 1993

Case No. (Law) 118982

BY JUDGE GERALD BRUCE LEE

This matter comes before the Court on the Board of Supervisors' Demurrer to Counts I, V, and VI of the Petition for Declaratory Order and Application for Correction of Erroneous Assessment of Plaintiff, the National Rural Utilities Cooperative Finance Corporation ("CFC"). Having considered the arguments and memoranda of counsel and for the reasons stated below, the Court sustains the County's demurrer.

### Facts

CFC is a non-profit corporation organized under the laws of the District of Columbia. Petition For Declaration Order and Application For Correction Of Erroneous Assessment at para. 1. CFC is exempt from federal taxation as a non-profit entity under the Internal Revenue Code. *Id.* CFC was formed by a group of non-profit rural utility cooperatives. *Id.* at para. 7.

CFC was created to obtain capital for its members at a lower cost than the members would be able to obtain for themselves. *Id.* at para. 9. CFC borrows capital and lends it to members at a lower rate of interest. *Id.* at para. 10. CFC uses interest on the loans to repay principal and interest on the funds borrowed by CFC and to cover its operating expenses. *Id.* If CFC receives interest in excess of its actual

operating expenses and costs, it allocates the excess, on a pro rata basis, back to individual members. *Id.* CFC's activities in Fairfax County are only administrative. *Id.* at para. 11. CFC documents loans and accepts loan applications in the County. *Id.* Funding and repayment occur outside of Virginia. *Id.* Of CFC's gross receipts, only a fraction actually has resulted from loans made while CFC was located in Fairfax county. *Id.* In October 1989, CFC relocated its headquarters from the District of Columbia to Fairfax County. *Id.* at para. 8. At that time, CFC requested Fairfax County to determine whether CFC was exempt from the County's Business, Professional and Occupational License (BPOL) tax. *Id.* at para. 16. By letter dated November 5, 1990, the County rejected CFC's request for exemption. *Id.* at para. 17. Significantly the Supervisor of Assessments found that:

> [T]he issue of profit is inconsequential . . . . It is our factual determination that despite the lack of profit, CFC does earn a livelihood through its transactions. Debts are covered, operating expenses and employee salaries are paid, and the corporate entity sustains its existence through its financial structure to continue the service of providing a ready source of affordable loans.

*Id.*

In 1990, the County assessed $233,431.03 against CFC at a rate of twenty cents per one hundred dollars of alleged gross receipts. *Id.* at para. 18. This was the rate applicable to business services under the BPOL tax. *Id.* The county reclassified CFC as a money lender, and CFC received a credit on its 1991 estimated BPOL tax liability. *Id.* at para. 19. For the 1991 tax year, the County assessed CFC's BPOL tax liability at $643,858.28. *Id.* at para. 20.

The County BPOL tax assessment against CFC includes revenue from loans that CFC made while it was headquartered in the District of Columbia. For example, in the 1991 tax assessment, CFC was assessed the above amount on gross receipts totalling $402,411, 424. *Id.* at para. 13. However, in that year, CFC received only $3,025,167.20 in interest from loans or lines of credit placed while it was in the County. *Id.*

After making demands upon the County to change its BPOL tax assessment, CFC filed its Petition on October 6, 1992. Count I of the Petition challenges the BPOL tax assessment under Va. Code § 58.1–3984, Count V challenges the constitutionality of the BPOL tax

assessment under the Commerce Clause of the United States Constitution, and Count VI challenges the constitutionality of the County's BPOL tax assessment under the Dillon Rule. The County demurs as to each of these counts.

## Discussion

The Court sustains the demurrer. As an initial matter, the Court notes that the function of a demurrer is to test whether the pleadings state a cause of action upon which relief can be granted, and a demurrer admits as true all allegations of material facts which are well pleaded. *Penick v. Dekker*, 228 Va. 161, 319 S.E.2d 760 (1984).

### Count I

In Count I, CFC pursuant to Va. Code Ann. § 58.1–3984 (Rep. Vol. 1991) challenges the County's determination that CFC is subject to the BPOL tax. Under § 58.1–3984, the taxpayer has the burden of showing that the assessment is erroneous or unlawful. Here CFC challenges the county's assessment of the BPOL tax by alleging that it is not "engaged in business" as defined under Code § 58.1–3703, the section of the Code authorizing counties to levy license taxes. In the alternative, CFC alleges that the determination of BPOL tax liability is a factual matter and that the County erroneously failed to consider controlling evidence.

The Virginia Supreme Court has defined "engaged in business" as it is used at common law and under § 58.1–3703 to mean "a course of dealing which requires the time, attention and labor of the person so engaged for the purpose of earning a *livelihood* or a profit." *Young v. Town of Vienna*, 203 Va. 265, 267, 123 S.E.2d 388, 390 (1962) (emphasis added). In *Virginia v. Wytheville Knitting Mills Employees Welfare Assoc.*, 195 Va. 663, 79 S.E.2d 621 (1954), the Court held that a canteen using its excess revenue for the welfare of employees was subject to tax regardless of its non-profit nature. The Court held that "[t]he legislature has not exempted charitable organizations engaged in business . . . and there is nothing to indicate that it has intended to exempt an association similar to that of petitioners." *Id.* at 670, 79 S.E.2d at 625. *See also* 1989 Ops. Att'y Gen. 311 (opining that fees collected by a non-profit organization from attendees at seminar are subject to a BPOL tax); 1986–87 Ops. Att'y Gen. 261 (opining that a

civil-organization tax exempt under the Internal Revenue Code may be subject to a local BPOL tax).

In this case, CFC's Petition alleges that it is a non-profit corporation under the Internal Revenue Code that uses its tax-exempt status and financial stability to lend money to its members at below-market interest rates. CFC uses the interest it receives to pay administrative expenses and to retire debt. It returns excess interest to the members. The facts pleaded do not indicate that the County unlawfully assessed the BPOL tax against CFC. On the contrary, the facts demonstrate that CFC is engaged in a course of dealing that requires it to expend time and labor to maintain itself as an entity. This case cannot be distinguished from *Wytheville Knitting Mills* or from those instances in which the Attorney General has opined that certain non-profit organizations are subject to BPOL tax assessments.

Furthermore, CFC contends that the Supervisor disregarded controlling evidence in assessing the BPOL tax. Under Code § 58.1–3984, CFC has the burden of showing that the Supervisor erred. First, CFC has not alleged facts supporting a claim that the assessment was erroneously calculated or that the Supervisor failed to consider "controlling evidence." Second, CFC is mistaken when it contends that the Supervisor erred because he assessed gross receipts, i.e. interest, from loans which were executed when CFC was headquartered in the District of Columbia. The term "engaged in business" under Code § 58.1–3703 includes interest from loans executed elsewhere because additional time, labor and effort must be spent to service outstanding loans. Statements of account must be prepared. Problem loans require the lender to negotiate with the borrower to obtain a work-out agreement or to file claims. The Court rejects CFC's argument because CFC assumes that once a loan agreement is signed, the lender does not engage in continuous activity. In fact, the lender is engaged in a continuous course of conduct until the loan is either paid, forgiven or discharged.

Accordingly, the demurrer as to Count I is sustained without prejudice. CFC is granted leave to file an amended petition within fifteen days of the date of this opinion.

### Count V

The Court sustains the demurrer to Count V. CFC asserts that the County's BPOL tax assessment on gross receipts includes revenue

from other states and that such an assessment is an impermissible burden upon interstate commerce because it is not fairly apportioned.

The Virginia Supreme Court in *Short Bros. v. Arlington County*, 244 Va. 520 (1992), considered a tax case where the taxpayer's offices were located in Arlington County but its activities of selling and leasing aircraft took place outside of Virginia. In considering the taxpayer's challenge to the gross receipts tax on revenue generated by activities outside of Arlington County, the Court opined that a tax of a business engaged in interstate commerce complies with Due Process and the Commerce Clause if (1) the tax is applied to an activity that has a substantial nexus with the taxing jurisdiction; (2) the tax is fairly apportioned; (3) the tax does not discriminate against interstate commerce; and (4) the tax is fairly related to the services provided by the taxing jurisdiction. *Id.* at 524 (citing *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279 (1977)). The fair apportionment prong addresses whether the taxpayer is subject to a risk of multiple taxation. *Id.* at 525.

In *Short Brothers*, the Court only addressed whether the tax was fairly apportioned. *Id.* at 525, n.2. It held that Arlington County fairly apportioned its BPOL tax because the taxpayer failed to produce any evidence to the County or at trial reflecting apportionment — that is, the risk of multiple or double taxation. Arlington County was the only jurisdiction assessing the gross receipts tax, and the taxpayer was headquartered in Arlington County. The Court ruled that the taxpayer had a "substantial nexus" to Arlington County and upheld the gross receipts tax on its activities outside of Virginia. *Id.* at 526–527.

As pointed out by CFC, plaintiff in *Short Brothers* failed to produce evidence of an unfair apportionment at trial. CFC argues that discovery has not taken place in this case and that a demurrer is, therefore, inappropriate. Nonetheless, *Short Brothers* indicates that the pleadings must allege that the taxpayer is subject to the risk of multiple taxation. CFC's pleading fails in this respect. Accordingly, the demurrer as to Count V is sustained without prejudice. CFC is granted leave to file an amended petition within fifteen days of the date of this opinion letter.

## Count VI

In Count VI, CFC alleges that the County's BPOL tax violates the Dillon Rule and is unconstitutional under the Virginia Constitution. CFC concedes that as applied to CFC, the BPOL tax was not uncon-

stitutional. However, CFC contends that it has standing to assert an alleged overbreadth in the County's BPOL tax ordinance. The Court rejects CFC's arguments. In *Suddarth v. Slane*, 539 F. Supp. 612, 618 (W.D. Va. 1982), the district court quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 610 (1973), stated that "a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others." The court noted the one exception to this doctrine is in the area of the First Amendment. 539 F. Supp. at 618. CFC does not assert First Amendment interests. Therefore, CFC lacks standing to assert the ordinance's potential overbreadth as to other taxpayers. The demurrer as to Count VI is sustained with prejudice and without leave to amend.