## Short Brothers (usa), Inc.

v.

## Arlington County

Record No. 920083

November 6, 1992

Present: All the Justices

*William L. S. Rowe (Nancy J. Assaf; John Jay Range; Michael P. McQuillen; Hunton & Williams*, on briefs), for appellant.

*Ara L. Tramblian, Deputy County Attorney (Charles G. Flinn, County Attorney*, on brief), for appellee.

JUSTICE LACY delivered the opinion of the Court.

In this appeal we consider the constitutionality of a business activity license tax assessed against a company headquartered in Arlington County and engaged in the business of leasing, selling, and servicing tangible property in interstate commerce.

Short Brothers (USA), Inc. (Short), a Massachusetts corporation, is engaged in the business of demonstrating, selling, leasing, and providing support services for commuter aircraft designed and manufactured by Short Brothers, PLC, of Belfast, Ireland. Short's corporate headquarters were located in Arlington County, Virginia. Short conducted its activities throughout the United States, selling and leasing aircraft in a number of states and maintaining an inventory of spare parts in Pennsylvania. None of the aircraft or parts involved in the sales and leases was located in or delivered to Virginia.

Arlington County imposes a business license tax, for the privilege of doing business in the county, on each business having a fixed place of business there. The County determines the amount of the tax by applying a rate schedule geared to the type of business to the gross receipts of the business. In 1986 Short reported "zero gross receipts to the county for business license tax purposes." As a result of this report, the County audited Short and reviewed its Virginia tax returns and other documents it provided. Based on this audit, the County assessed a business license tax against Short under two categories: (1) under the business service occupation tax, a license tax of $16,759.25, based on 1985 gross receipts of $4,795,499 from the sale and lease of airplanes and airplane parts outside the Commonwealth; and (2) under the wholesale merchant tax, a license tax of $9,641.94, based on 1985 gross receipts of $12,052,424 from the sale of airplanes.

Short sought a correction of the business license tax assessment from the County pursuant to Code § 58.1-3980 and argued, in part, that all of its income was generated from sales and leases that were made outside the Commonwealth and, therefore, the County could not constitutionally tax that income. Although Short and the County

Commissioner of Revenue's office remained in regular communication, the dispute was not resolved in Short's favor. Consequently, Short filed this litigation to correct Arlington County's assessment of the business license tax for 1986.

Following an *ore tenus* hearing, the trial court dismissed Short's application, holding that the 1986 Arlington County business license tax levied on Short complied with the four-prong test established by the United States Supreme Court in *Complete Auto Transit, Inc.* v. *Brady*, 430 U.S. 274 (1977), and, therefore, did not violate the Due Process Clause or the Commerce Clause of the United States Constitution. We granted Short this appeal and will affirm the judgment of the trial court.

Short initially attacks the validity of the tax on the ground that it is actually a tax on the sale and rental of aircraft and aircraft parts. Short contends that ''when a state tax is imposed on the sale or rental of *property*, the state of destination of the property has the authority to impose a tax on revenues generated from those transactions.''

Short erroneously presumes that when a tax is calculated based on revenue generated by the sale or lease of property, that tax necessarily is transformed into a tax *on* the sale or lease of the property. Here, revenue is merely an element in the formula used to determine the taxpayer's liability for the tax at issue, just as it also may serve to determine the taxpayer's liability for income taxes, sales taxes, use taxes, or value-added taxes. Although a single property sale generates the income that forms the basis for all these types of taxes, the taxes are different taxes, based upon different underlying philosophies, different taxing jurisdictions, and different taxpayers. The use of that amount to calculate various types of tax liability does not automatically convert a levy from one type of tax to another. Arlington County's business license tax is a business activity tax measured by gross receipts, not a tax on the sale or lease of goods, just as an income tax based on those receipts does not tax those transactions themselves.[1]

---

[1] Even if the tax were a tax on the sale of tangible property, Short's legal premise that only the jurisdiction of the property's destination may tax the income realized is erroneous. *Mobil Oil Corp.* v. *Commissioner of Taxes*, 445 U.S. 425, 438, 440 (1980). As recognized in the Uniform Division of Income for Tax Purposes Act, the income from the sale of tangible personal property is taxable by the commercial domicile of the taxpayer where the taxpayer was not taxable in the state in which the property was located. Uniform Division of Income for Tax Purposes Act (U.L.A.) § 6.

■ Short next contends that the County cannot constitutionally measure its license tax by ''income derived from the sale or lease of property in other states even if services related to the sale or lease are performed in Arlington County,'' citing *Standard Pressed Steel Co.* v. *Washington Revenue Dept.*, 419 U.S. 560 (1975), *Evco* v. *Jones*, 409 U.S. 91 (1972), and *Gwin, White & Prince, Inc.* v. *Henneford*, 305 U.S. 434 (1939). We agree with Short that these three cases stand for the proposition ''that a tax on local services incidental to an interstate sale falls within the constitutional prohibition against interference with interstate commerce.'' Nevertheless, the Supreme Court's later decision in *Complete Auto* rejected that proposition, and it simply is no longer controlling authority.

■ In *Complete Auto* the Supreme Court addressed the conflicting principles that had developed in this area of jurisprudence. The Court rejected the type of *per se* analysis used in *Gwin*, *Evco*, and *Standard Pressed Steel*, which provided taxpayers involved in interstate business activities virtual immunity from state taxation. Instead, the Court adopted a course that requires taxpayers engaged in interstate commerce to pay their just share of the state tax burden, even if it increases the cost of doing business. *Goldberg* v. *Sweet*, 488 U.S. 252, 259 (1989). The analysis adopted by the Court centered on the practical effect of the tax in issue. The Court determined that state taxation of businesses engaged in interstate commerce complies with the requirements of the Due Process Clause and the Commerce Clause if: (1) the tax is applied to an activity that has a substantial nexus with the taxing jurisdiction; (2) the tax is fairly apportioned; (3) the tax does not discriminate against interstate commerce; and (4) the tax is fairly related to the services provided by the taxing jurisdiction. *Complete Auto*, 430 U.S. at 279.

■ Since adopting this test, the Supreme Court has repeatedly upheld the use of income received from interstate sales as a factor in measuring the amount of the tax. For example, in a recent case, *Trinova Corp.* v. *Michigan Dept. of Treasury*, 498 U.S. 358 (1991), the Court held Illinois' value-added tax to be fairly apportioned. The tax was calculated on the basis of three factors: payroll, property, and sales. The value of these three factors was determined by considering ratios of a company's total payroll, property, and sales, both in-state and out-of-state, to total in-state payroll, property, and sales. Consequently, we reject Short's argument since it merely reasserts the unconstitutional *per se* analysis that the Supreme Court rejected in *Complete Auto*.

■ We now turn to Short's assertion that the license tax assessed against it was unconstitutional because it was not fairly apportioned.[2] The fair apportionment prong of the *Complete Auto* test addresses a principal concern inherent in taxation of interstate activity — the risk of multiple taxation. Determining whether a tax is fairly apportioned, therefore, presumes that the taxpayer would be subject to tax in some other jurisdiction. If the tax is based on revenues attributed solely to the taxing jurisdiction and the taxpayer is not subject to taxation based upon those revenues elsewhere, there is no risk of double or multiple taxation and no need, or basis, for apportioning the tax. Such are the circumstances in this case.

The County assessed the license tax based on financial information contained in Short's tax returns and other documentation it provided. In none of these papers did Short allocate any income to another jurisdiction. Short asserted, in its correspondence with the County, that all sales and leases involved goods located outside Virginia. However, Short never presented any evidence to the County or at trial reflecting the apportionment of its gross receipts or reflecting that it would be, or could be, subject to taxation in other jurisdictions for those transactions.[3]

■ It is not enough to identify other jurisdictions in which sales or leases of goods occur. The taxpayer has the burden of showing that the tax assessed subjected it to the risk of double or multiple taxation and, therefore, violated the Due Process Clause and the Commerce Clause. Code § 58.1-3984; *Department of Taxation* v. *Westmoreland Coal Co.*, 235 Va. 94, 99, 366 S.E.2d 78, 80 (1988). In this case, Short has not carried that burden.

■ A prerequisite of the authority to tax is some nexus between the taxpayer and the taxing jurisdiction. As recently explained by the United States Supreme Court, minimum contacts with the taxing jurisdiction are sufficient to meet the requirements of the Due Process Clause; however, the Commerce Clause requires ''substantial nexus'' with the taxing jurisdiction to justify burdening interstate commerce. *Quill Corp.* v. *North Dakota*, ___ U.S. ___, ___, 112 S.Ct. 1904, 1909 (1992). Consequently, the Court reaffirmed its prior

---

[2] Short does not challenge the validity of the license tax under the remaining three prongs of the *Complete Auto* test.

[3] Whether the transactions would be subject to a tax payable by another taxpayer is irrelevant to the issue of allocation of Short's gross receipts and its exposure to the risk of multiple taxation.

holding in *National Bellas Hess, Inc.* v. *Department of Revenue*, 386 U.S. 753 (1967), that mere contact with a state through common carrier or the mails is insufficient to subject the business to the taxation jurisdiction of that state. *Quill*, ___ U.S. at ___, 112 S.Ct. at 1910.

■ From the record in this case, it is not at all clear that another jurisdiction could establish the nexus necessary to impose a tax on Short. Short presented no evidence to establish that it had a place of business in any other state; it alleged no physical presence in any of the states in which it sold or leased the planes and parts. In the absence of any evidence that any other taxing jurisdiction could subject Short to any type of tax based on its gross receipts, there is no basis on which to require the County to apportion the tax. Simply put, the evidence does not show that Short is under an actual or potential risk of multiple taxation based on the gross receipts at issue here.

Short chose Arlington County as its place of business and conducted all its revenue-generating operations from that office for the period in question. The County was the base of operations for all of Short's leasing activities. Short's salesmen all were based in, and contacted their existing customers from, Arlington County. Short approved all lease transactions, kept its documents, and received payments on its transactions at its Arlington County offices. Short generated its advertising from the County and told potential customers to contact the Arlington office. Short arranged the painting and repair of aircraft and initiated the sale of aircraft parts from the Arlington office. Short conducted its negotiations for the sale of aircraft and received the proceeds from, and documentation of, all aircraft sales there. Short had no other offices in the United States, after the California office was phased out early in 1985.[4]

■ The Arlington-based activities were an integral part of the sales and leases at issue and added value to those transactions. "In the case of more-or-less integrated business enterprise operating in more than one State, however, arriving at precise territorial allocations of 'value' is often an elusive goal, both in theory and in practice." *Container Corp. of America* v. *Franchise Tax Bd.*, 463 U.S. 159, 164 (1983). Here, Arlington County was entitled to levy the business license tax on Short, and to use Short's total gross receipts

---

[4] Although Short states that it "disputes" some of these factual findings by the trial judge as unsupported by the evidence, it did not assign error to those findings.

as a measurement factor. If there was any legitimate basis on which to allocate those receipts to another taxing jurisdiction, Short had the burden to produce such evidence. It has not carried that burden.

 Therefore, we conclude that the 1986 Arlington County business activity tax assessed against Short complies with the *Complete Auto* test and that Short's constitutional rights under the Due Process Clause and the Commerce Clause were not violated.[5] Accordingly, we will affirm the judgment of the trial court.

*Affirmed.*

---

[5] In view of this holding, we need not address in the abstract Short's assignment of error that the business activity license taxation scheme and its administration taken as a whole are constitutionally infirm.