Present:  All the Justices

CITY OF WINCHESTER

OPINION BY JUSTICE LAWRENCE L. KOONTZ, JR.

v.  Record No. 951621                    June 7, 1996

AMERICAN WOODMARK CORPORATION

FROM THE CIRCUIT COURT OF THE CITY OF WINCHESTER
John E. Wetsel, Jr., Judge


In this appeal, we consider whether a municipal government's assessment of a business, professional, and occupational license ("BPOL") tax comported with the requirements of the Commerce Clause of the United States Constitution.[1]  Under the specific facts of this case, we agree with the trial court's judgment that the assessment was not constitutional.

## I.

### Factual Background

The case was decided on motion for summary judgment upon the pleadings and stipulations of fact.  American Woodmark Corporation (American Woodmark), a Virginia corporation, maintains its corporate headquarters in the City of Winchester (the City).  American Woodmark operates a number of manufacturing, storage, and distribution facilities throughout the United States, though none of these facilities is located within the City.[2]

---

[1]U.S. Const. art. I, § 8, cl. 3 ("Congress shall have Power . . . [t]o regulate Commerce . . . among the several States . . . .").  When construed to limit state taxation where Congress has not expressly legislated, the provision is generally referred to as the "dormant" Commerce Clause.  See Oklahoma Tax Comm'n v. Jefferson Lines, Inc., ___ U.S. ___, 115 S.Ct. 1331, 1335 (1995).  Here, for brevity, we will simply refer to the Commerce Clause.

[2]We have previously addressed the nature of American Woodmark's business operations and its relationship with the City in American Woodmark v. City of Winchester, 250 Va. 451, 464

On April 20, 1993, the Commissioner of Revenue for the City assessed BPOL taxes against American Woodmark for the years 1990 and 1991 in the amount of $374,636.91 and $343,918.42, respectively. On April 14, 1994, American Woodmark filed in the Circuit Court of the City of Winchester an application to correct these assessments of local taxes. American Woodmark alleged that these assessments were not fairly apportioned and, thus, constituted an improper local restraint on interstate commerce in violation of the Commerce Clause.

On March 17, 1995, American Woodmark filed a motion for summary judgment with a supporting memorandum. Stipulations of fact and additional supporting memoranda were filed by the parties. On May 12, 1995, the trial court filed a written opinion in which it found that the assessments against American Woodmark failed to satisfy the requirements of the Commerce Clause because the City had not fairly apportioned the assessments to tax only those gross receipts attributable to American Woodmark's business activities within the City. After receiving the City's objections to its written opinion, the trial court entered a final order on June 5, 1995, granting summary judgment to American Woodmark and declaring the BPOL assessments made by the City invalid. We awarded the City this appeal.

## II.
### Constitutional Restrictions on Taxation
### of Businesses Conducting Interstate Commerce

The United States Supreme Court has long construed the

S.E.2d 148 (1995).

Commerce Clause as a restraint on state and local taxing power. See, e.g., Gibbons v. Ogden, 22 U.S. (9 Wheat.) 1 (1824). Modern jurisprudence regarding state and local taxation under the Commerce Clause emerged in the late 1930s, when the Court began to eschew formalistic distinctions that lacked substance and focused more on the practical effect of the tax imposed, or its effect despite any distinctions in form. See, e.g., Western Live Stock v. Bureau of Revenue, 303 U.S. 250 (1938). In prior decisions, the Court had merely held that a state or locality could regulate "local," but not "national," commerce. Cooley v. Board of Wardens, 53 U.S. (12 How.) 299, 316-19 (1851).

After 1938, the apportionment of a local tax to cover those activities rationally related to a taxing authority's power and interest became the central inquiry. The Court announced that for a tax to be valid under the Commerce Clause, the tax cannot, in effect, reach revenue generated by activities lacking this nexus. See, e.g., Central Greyhound Lines, Inc. v. Mealey, 334 U.S. 653, 663 (1948).

In Complete Auto Transit, Inc. v. Brady, 430 U.S. 274 (1977), the Court spelled out this apportionment rule, announcing a four-part test to assess the validity of a local tax under the Commerce Clause. The tax must be (1) applied to an activity with a substantial nexus with the taxing authority, (2) fairly apportioned, (3) nondiscriminatory to interstate commerce, and (4) fairly related to the services provided by the state or locality. Id. at 279. The Court also restated the realist approach, noting that the focus is not on the tax statute's

formal language, but rather on its practical effect.  Id.; see also Oklahoma Tax Comm'n v. Jefferson Lines, Inc., ___ U.S. ___, ___, 115 S.Ct. 1331, 1336 (1995).

## III.
## Application of the Commerce Clause to the Assessment

The dispute in this case is whether the assessments in question satisfy the "fairly apportioned" prong of the constitutional test enunciated in Complete Auto.  This prong requires that an assessment be both internally and externally consistent.  Goldberg v. Sweet, 488 U.S. 252, 261 (1989).  An assessment is internally consistent if applying the text of the taxing statute, and assuming that every other jurisdiction applied the same statute, the taxpayer would not be subjected to a risk of double taxation.  Id. at 261.  An assessment is externally consistent if the assessment applies only to the "portion of the revenues from the interstate activity which reasonably reflects the in-state component of the activity being taxed."  Id. at 262 (citation omitted).

In this case, the trial court held that the assessments were internally consistent because if every taxing jurisdiction applied the tax as set out in the City's ordinance the taxpayer would be allowed to deduct amounts paid to other taxing jurisdictions and therefore would not be subject to multiple taxation.  That holding is not challenged on appeal.[3]  Thus, we

---

[3] American Woodmark argues on brief that this holding was erroneous; however, cross-error was not assigned to the trial court's holding and we will not consider this argument.  Rule 5:18(b).

need consider only whether the assessments comply with the requirements of external consistency.

To prevail in a claim that a tax assessment fails the external consistency test, a taxpayer must "'demonstrate that there is no rational relationship between the income attributable to the State and the intrastate values of the enterprise.'" Amerada Hess Corp. v. Director, Division of Taxation, New Jersey Department of the Treasury, 490 U.S. 66, 75 (1989)(quoting Container Corp. of America v. Franchise Tax Board, 463 U.S. 159, 180 (1983)). There is no specific formula which must be adopted by a taxing jurisdiction to satisfy the external consistency test, but "an objecting taxpayer has the burden to demonstrate by clear and cogent evidence that the income attributed to the State is in fact out of all appropriate proportions to the business transacted . . . in that State, or has led to a grossly distorted result." Jefferson Lines, ___ U.S. at ___, 115 S.Ct. at 1343 (citations and internal quotation marks omitted).

The City argues that the trial court's determination that the assessments were not externally consistent was erroneous because American Woodmark failed to meet its burden of proof. The City contends that the record shows that American Woodmark is a highly centralized, unitary business and its corporate headquarters contributes value to its business. According to the City, all the taxpayer's gross receipts are in some way attributable to the headquarters office and presumably could all be used as the basis for the assessments. Thus, in the absence of quantified evidence of the specific value of the numerous

functions performed by the headquarters in Winchester, the taxpayer did not carry its burden of proof and, the City concludes, the trial court erred in holding that the assessments were invalid.

We disagree. In the circumstances here, where the City based its assessments on 100% of the taxpayer's revenues, American Woodmark was not required to produce evidence of a specific level of value attributable to its Winchester operation to prevail in its assertion that the assessments were not externally consistent and, thus, were in violation of the Commerce Clause. American Woodmark presented uncontested evidence that, during the years in question, it operated 24 facilities in 13 different states. These facilities included manufacturing and distribution centers as well as service and sales offices. Common sense compels the conclusion that these operations added value to American Woodmark's business product and were revenue producing activities. By definition, assessments based on 100% of American Woodmark's revenues included revenues realized from value produced in locations other than in the taxing jurisdiction. Given the number of facilities and operations outside Winchester, it is equally axiomatic that the value added to the product by the Winchester operations could not possibly produce 100% of the revenues. Therefore, we conclude that American Woodmark has met its burden of proof by presenting clear and cogent evidence that the income which the City through its assessments attributed to operations conducted in Winchester is "out of all appropriate proportions to" and has

"no rational relationship" to the business transacted in Winchester.  Accordingly, the trial court properly held that the City's assessments of its BPOL tax against American Woodmark for 1990 and 1991 were invalid.

Contrary to the City's assertion, this conclusion is consistent with our analysis in Short Brothers, Inc. v. Arlington County, 244 Va. 520, 423 S.E.2d 172 (1992).  In that case we upheld Arlington County's assessment for a business license tax based on the taxpayer's total gross receipts because the evidence showed that the taxpayer's sole business facility in the United States was in Arlington County and that it conducted all of its revenue-generating operations from that facility.  We concluded that "[i]f there was any legitimate basis on which to allocate those receipts to another taxing jurisdiction, Short had the burden to produce such evidence.  It has not carried that burden."  Id. at 527, 423 S.E.2d at 176; see also Ryder Truck Rental, Inc. v. County of Chesterfield, 248 Va. 575, 579-80, 449 S.E.2d 813, 816 (1994).  The only difference between the result in Short Brothers and the instant case is that here the stipulated facts showed a "legitimate basis on which to allocate [American Woodmark's] gross receipts to another taxing jurisdiction."

**IV.**

**Summary Judgment**

Finally, we turn to the City's assertion that summary judgment was improper.  The City argues that it should have been permitted to develop a more complete record in order to

demonstrate that its assessments were proportionate to the activity conducted by American Woodmark within the City. We disagree. No material facts were in dispute. The stipulations of fact fairly and completely outline the nature of American Woodmark's business operations and the function of the headquarters unit within those operations. While the City might have been able to establish with a full evidentiary hearing the portion of gross receipts attributable to the operations of the headquarters unit, as we noted above, it is beyond the realm of conception that it could have established all gross receipts as attributable to such operations, thus justifying the failure to make an apportionment in the original assessments.

**V.**

**Conclusion**

In short, we hold that under the specific facts of this case, the City failed to apportion the BPOL tax assessments as required by the Commerce Clause. Accordingly, the judgment of the circuit court will be affirmed.

<u>Affirmed</u>.