PRESENT: Goodwyn, C.J., Powell, Kelsey, McCullough, and Chafin, JJ., and Russell and Millette, S.JJ.

COXCOM, LLC, D/B/A COX
COMMUNICATIONS NORTHERN VIRGINIA

                                                    OPINION BY
v. Record No. 210568              JUSTICE STEPHEN R. McCULLOUGH
                                                    July 14, 2022

FAIRFAX COUNTY, ET AL.


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Grace Burke Carroll, Judge

Coxcom, L.L.C. ("Cox") seeks a refund of Business and Professional Occupational License ("BPOL") taxes it paid to Fairfax County. Cox argues that a federal statute, the Internet Tax Freedom Act ("ITFA"), preempts the County's collection of BPOL taxes for the sale of internet access services. The circuit court disagreed, concluding that ITFA's grandfather clause permitted the County to impose the tax. For its part, the County assigns cross-error to several of the court's rulings. We conclude that ITFA applies and the grandfather clause does not apply. Consequently, we reverse and remand for a determination of the refund due to Cox.

BACKGROUND

I.    CONGRESS ENACTS THE INTERNET TAX FREEDOM ACT TO FOSTER THE GROWTH OF THE INTERNET.

In 1998, with a view to promoting the growth of the internet and internet commerce, Congress enacted the Internet Tax Freedom Act. This statute places a moratorium on state and local taxes on internet access services. Internet Tax Freedom Act, Pub. L. No. 105-277, §§ 1100 *et seq.*, 112 Stat. 2681 (1998), codified at 47 U.S.C. § 151. ITFA initially contained a grandfather clause, which has since been repealed.[1] This grandfather clause provided that

---

[1] The Trade Facilitation and Trade Enforcement Act of 2015 set a June 30, 2020, expiration date for the grandfather clause. ITFA § 1104(a)(2)(A) *as amended by* Pub. L. No.

preexisting taxes on internet access services were exempt from the moratorium if "generally imposed and actually enforced prior to October 1, 1998." ITFA § 1104(a)(1). A tax was "generally imposed and actually enforced" if:

(A) the tax was authorized by statute; and

(B) either:

(i) a provider of Internet access services had a reasonable opportunity to know, by virtue of a rule or other public proclamation made by the appropriate administrative agency of the State or political subdivision thereof, that such agency has interpreted and applied such tax to Internet access services; or

(ii) a State or political subdivision thereof generally collected such tax on charges for Internet access.

*Id.* ITFA thus allowed a taxing authority two possibilities to grandfather an existing tax on internet services: (1) a rule or other public proclamation by an appropriate agency providing that the agency interprets and applies the tax to internet access services, or (2) a practice of generally collecting the tax.

II. COX INVOKES THE INTERNET TAX FREEDOM ACT TO SEEK A REFUND OF A PORTION OF ITS BPOL TAXES.

In 1994, the Board of Supervisors of Fairfax County adopted a BPOL ordinance, currently Fairfax County Code § 4-7.2-22 ("ordinance"). This ordinance provides that "[b]usiness service occupations" including, but not limited to, "[o]n[]line computer services, computer time share services" would be subject to the BPOL tax. During this time, America Online, Inc. ("AOL"), then one of the world's largest internet service providers ("ISPs"), was headquartered in the County. While AOL moved its headquarters out of the County in 1996, it

114-125 at § 922, 130 Stat. 281 (2016). The ITFA now prohibits all state and local taxes on internet access.

2

continued to maintain office space in the County and provide internet access services to customers residing in the County. AOL paid the BPOL tax at the rate established in the ordinance for businesses that provided "on[]line computer services," classifying its internet access services revenue as "online service revenue."

Cox has provided, among other services, internet access services to customers in the County since 2000. Cox paid its BPOL tax to the County based on gross receipts from internet access services revenue between 2013 until 2016.

In 2016, Cox filed a request for a BPOL tax refund with the County's Department of Tax Administration for the tax years of 2013, 2014, and 2015, asserting that ITFA preempts the County from imposing the BPOL tax on internet access service revenues. Cox further asserted that the Fairfax BPOL tax did not qualify for ITFA's grandfather clause exemption because, prior to October 1, 1998, the County did not give Cox a reasonable opportunity to know that the tax had been applied to it under ITFA § 1104(a)(1)(B)(i), or generally collect the BPOL tax under ITFA § 1104(a)(1)(B)(ii). The Department of Tax Administration determined that ITFA did not apply to the BPOL tax because it was not a tax on internet access but rather a general tax on a business' entire gross receipts, "not identified to any particular [service or] good." The Department of Tax Administration further determined that, if ITFA did apply, the BPOL tax was grandfathered under ITFA's grandfather clause exemption as it was authorized by the County's ordinance and the County generally imposed and actually enforced the BPOL tax prior to October 1, 1998. Cox then appealed to the Virginia Tax Commissioner.

The Commissioner found that ITFA generally prohibited the imposition of the BPOL tax on internet access services. The Commissioner concluded that the case turned on whether the grandfather clause applied and he declined to opine on that question. Both Cox and the County

3

appealed the Commissioner's decision to the circuit court. The circuit court consolidated the appeals.

The parties filed cross-motions for partial summary judgment. Cox asserted in its motion for partial summary judgment that the BPOL tax was a tax on internet access services and therefore preempted by ITFA unless grandfathered.[2] Cox further asserted that the County had the burden of proving at trial that the BPOL tax qualified for the grandfather clause exemption as the County was the party seeking the grandfather clause's protection. The County responded in its motion that the ITFA did not apply to the BPOL tax because the tax was not a tax on internet access services under ITFA, but was instead a general tax measured by gross receipts. It argued that determining who had the burden of proving whether the BPOL tax was grandfathered should not be resolved at the summary judgment stage.

The circuit court granted Cox's motion for partial summary judgment and denied the County's motion for partial summary judgment. The circuit court held that the BPOL tax was a tax on internet access and was preempted because ITFA was broadly drafted to prohibit taxes on internet access in most forms, including ones based on gross receipts. It further held that because the BPOL tax violated ITFA's moratorium on taxes on internet access, the County would bear the burden of proving at trial whether the BPOL tax qualified for the grandfather clause exemption. The court entered an order memorializing the letter opinion, reserving for decision the question of whether the BPOL tax was grandfathered. The parties stipulated that the "County was authorized by statute prior to October 1, 1998 to impose its BPOL tax" under ITFA

---

[2] Neither party raised the issue of whether the BPOL tax was grandfathered at the summary judgment stage, reserving the issue for trial.

4

§ 1104(a)(1)(A). Thus, the narrow issue that remained was whether the BPOL tax met the requirements of ITFA's grandfather clause, ITFA § 1104(a)(1)(B).

At trial, the County's auditor testified that multiple ISPs that were providing internet access services in the County prior to October 1, 1998, including Prodigy and Roadrunner, did not pay the BPOL tax. However, she testified that the BPOL tax was only imposed on companies that had a "definite place of business" in the County. The company's own reporting of its situs determined whether a company had a definite place of business in the County. When asked if she knew whether Prodigy and Roadrunner had a situs in the County, she testified that she believed they did not because they had not paid BPOL taxes.

The circuit court concluded that the BPOL tax qualified for the grandfather clause exemption. The court found that the ordinance the County adopted in 1994 constituted a rule or public proclamation under ITFA § 1104(a)(1)(B)(i). The court reasoned that the ordinance's language providing for the application of the BPOL tax to "on[]line computer services, computer time share services" gave ISPs a reasonable opportunity to know that the BPOL tax applied to them. The court noted that AOL paid the BPOL tax during this time. However, the court found the County failed to prove it generally collected the BPOL tax prior to October 1, 1998, as required by ITFA § 1104(a)(1)(B)(ii), because it only provided AOL as an example of an ISP paying the BPOL tax. The evidence demonstrated other ISPs, such as Roadrunner and Prodigy, did not pay the BPOL tax for undetermined reasons. The circuit court held the County did not need to meet both ITFA § 1104(a)(1)(B)(i) and ITFA § 1104(a)(1)(B)(ii) to be grandfathered. Cox appeals from this decision and the County assigns cross error to several of the circuit court's rulings.

5

ANALYSIS

I. A BPOL TAX THAT COLLECTS A TAX FROM SALES OF INTERNET ACCESS SERVICES IS COVERED BY ITFA.

The circuit court concluded that ITFA applies to the County's collection of BPOL taxes from Cox. The County assigns cross-error to this holding. Citing *Short Bros. (USA), Inc. v. Arlington Cnty.*, 244 Va. 520, 523 (1992), the County argues that the BPOL tax does not tax internet access services. Instead, it is a tax on business activity as measured by gross receipts. This issue is one of statutory construction, and we therefore review the circuit court's conclusion de novo on appeal. *Miller & Rhoads Bldg., L.L.C. v. City of Richmond*, 292 Va. 537, 541 (2016).

In this instance, the tax moratorium is imposed by a federal statute, and therefore, definitions in the federal statute, rather than state case law, are controlling. ITFA imposes a moratorium on any "tax on Internet access." ITFA § 1101(A)(1). ITFA broadly defines "tax" as "any charge imposed by any governmental entity for the purpose of generating revenues for governmental purposes." ITFA § 1105(8)(A). In addition, the statute provides that "[t]he term 'tax on Internet access' means a tax on Internet access, regardless of whether such tax is imposed on a provider of Internet access or a buyer of Internet access and regardless of the terminology used to describe the tax." ITFA § 1105(10)(A). Finally, ITFA contains a number of exceptions concerning what constitutes a tax on the internet, but none of those exceptions cover a tax like the BPOL tax at issue here. *See, e.g.*, ITFA §§ 1105(8)(B), 1105(10)(C). Given the broad definition contained in the federal statute, and the lack of an exception that would apply to the BPOL tax, we hold that the circuit court correctly found that ITFA applies to the County's BPOL tax.

II.     THE GRANDFATHER CLAUSE DOES NOT RESCUE THE COUNTY'S IMPOSITION OF A
        TAX ON INTERNET ACCESS SERVICES.

A.      The County's BPOL Tax does not satisfy the requirement of a rule or public
        proclamation that an appropriate administrative agency has interpreted and
        applied the BPOL Tax to internet access services.

ITFA's grandfather clause allows a tax on internet access services if the tax was

authorized by statute – the parties stipulated that it was, based on Code § 58.1-3702 – *and*

> a provider of Internet access services had a reasonable opportunity
> to know, by virtue of a rule or other public proclamation made by
> the appropriate administrative agency of the State or political
> subdivision thereof, that such agency has interpreted and applied
> such tax to Internet access services . . . .

ITFA § 1104(a)(1)(B)(i).

The County imposed a BPOL tax on "[b]usiness service occupations" including, but not

limited to, "[o]n[]line computer services, computer time share services." Fairfax County Code

§ 4-7.2-22. "On[]line computer services" can but does not necessarily apply to internet access

services. Online computer services could mean internet-based sales, distance education,

computer support, customer support, and so on. The County's auditor testified that the phrase

"[o]n[]line computer services" could apply to different types of services. Under ITFA

§ 1104(a)(1)(B)(i), the "appropriate administrative agency of" Fairfax County was required to

issue a "rule or other public proclamation" stating that it had "interpreted and applied its [BPOL]

tax to Internet access services." The County argues that it satisfied this requirement by

publishing the ordinance itself. We disagree with the County.

First, the County and the Board of Supervisors of Fairfax County are not an

"administrative agency" of Fairfax County. The Board of Supervisors is the governing body of

the County. Code § 15.2-604; *see also* Code § 15.2-602 ("The powers of the county as a body

politic and corporate shall be vested in the board of supervisors."). The Board of Supervisors

7

and the County generally do not administer the County's taxes. An "administrative agency" is "[a]n official body, esp. within the government, with the authority to implement and administer particular legislation." BLACK'S LAW DICTIONARY 77 (11th ed. 2019). Under the County Code, an "agency" means "all offices, departments, institutions, boards, commissions, and corporations of the County government . . . ." Fairfax County Code § 1-1-2(a)(1). The County's Department of Tax Administration is the administrative agency tasked with construing and implementing the BPOL tax. Fairfax County Code §§ 4-7.2-3(A), 4-7.2-5, 4-7.2-6(c), 4-7.2-9, 4-7.2-10, 4-7.2-12.

Second, the publication of the ordinance itself does not satisfy the requirement that the County agency responsible for the interpretation and collection of taxes has interpreted and will apply the BPOL tax to internet access services. There is a difference between publishing an ordinance and a proclamation clarifying the meaning of the ordinance. In *City of Eugene v. Comcast of Or. II, Inc.*, 333 P.3d 1051, 1067 (Ore. Ct. App. 2014), the Court rejected a similar argument, reasoning that

> It is not enough that the language of its ordinance, or even its rules, might be broad enough to encompass Internet access services. Rather, under the ITFA, a "rule or public proclamation" must give the provider of Internet access a reasonable opportunity to know that the "agency *has interpreted and applied such tax to Internet access services*." ITFA § 110[4(a)(1)(B)(1)] (emphasis added). The city cannot point to any public proclamation that, as of October 1, 1998, provided notice that the city "interpreted and applied" its tax to Internet access services.

"When a [tax] statute, as written, is clear on its face, this Court will look no further than the plain meaning of the statute's words." *Department of Taxation v. Delta Air Lines, Inc.*, 257 Va. 419, 426 (1999). ITFA requires an "agency" to issue a public proclamation that it "has interpreted and applied such tax to Internet access services." ITFA § 1104(a)(1)(B)(i). The

8

Fairfax County BPOL does not satisfy these requirements. Therefore, this option to grandfather in the County's BPOL tax on internet access services is not applicable.

B.    Applying the standard of review, we uphold the circuit court's determination that the County failed to establish that it "generally imposed and actually enforced" its BPOL tax on internet access services.

ITFA's grandfather clause provided a second avenue for a taxing authority to collect taxes on internet access services: when a tax was "generally imposed and actually enforced" and "a State or political subdivision thereof generally collected such tax on charges for Internet access." ITFA § 1104(a)(1)(B)(ii).

1.    The County, which sought to avail itself of the grandfather clause, bore the burden of proving its applicability.

The circuit court concluded that the County was required to shoulder the burden of proving that the grandfather clause applied. The County assigns cross-error to this ruling, arguing that Cox should be the party responsible for bearing the burden of proof. It contends that a party challenging a tax assessment must bear the burden of proving the tax was erroneously assessed. While the County is correct as a general proposition, this case involves a United States law that broadly prohibits taxing internet access. ITFA § 1101(A)(1). The County seeks to shelter a portion of its BPOL tax revenues from this broad prohibition by invoking the grandfather clause. A party seeking to avail itself of a grandfather clause bears the burden of proving that it falls within that clause. *See Frank Shop, Inc., v. Crown Cent. Petroleum Corp.*, 261 Va. 169, 173-74 (2001). We conclude that the circuit court correctly imposed the burden on the County of establishing that it fell within the parameters of the grandfather clause.

2.    The evidence failed to establish that the County generally imposed and actually enforced its BPOL tax on internet service providers.

9

ITFA authorized taxing authorities to maintain a tax on internet access provided that they "generally imposed and actually enforced as of November 1, 2003" and "a State or political subdivision thereof generally collected such tax on charges for Internet access." ITFA § 1104(a)(1)(B)(ii). The circuit court held that the County failed to meet its burden of establishing that it generally collected its BPOL tax on internet service providers. The County assigns cross-error to this finding, arguing that the evidence it presented established that it generally imposed and actually enforced its BPOL tax on internet access services. As noted above, the County was required to bear the burden of proving that it could avail itself of the grandfather clause.

"On appeal, we view the evidence and all reasonable inferences arising therefrom in the light most favorable to the prevailing party at trial." *Western Refining Yorktown, Inc. v. County of York*, 292 Va. 804, 815 (2016). In a bench trial such as this, the trial court determines the credibility of the witnesses' testimony and the weight of the evidence. *Id.*

The evidence established that multiple companies provided internet access services to customers in the County prior to October 1, 1998. According to the County's evidence, a single entity, AOL, paid the BPOL tax on internet access services revenue during that time. Other internet service providers, such as Prodigy and Roadrunner, were not paying the BPOL tax. The County's auditor testified that Prodigy and Roadrunner were not paying the BPOL tax because the BPOL tax was only imposed on businesses with a "definite place of business" in the County. However, when asked if she knew whether ISPs Prodigy and Roadrunner had a situs in the County, she responded in circular fashion that she believed they did not have a situs in the County on the basis that they had not paid BPOL taxes. She also was not sure if other companies provided internet access services during the relevant time period, but assumed that if they did not

10

pay BPOL taxes it was either because they did not provide such services or have a situs in the County. The County's auditor was not sure what canvassing activities the County may have engaged in at the relevant time to determine what ISPs were situated in the County. The circuit court could sensibly conclude on this paucity of evidence that the County failed to meet its burden of proving that the County generally collected the BPOL tax prior to October 1, 1998.

CONCLUSION

For the foregoing reasons, we will reverse the judgment of the circuit court and remand the case for a determination of the refund due to Cox.

*Reversed and remanded.*

11