**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Crutchfield Corp. v. Testa,* **Slip Opinion No. 2016-Ohio-7760.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-7760

CRUTCHFIELD CORPORATION, APPELLANT AND CROSS-APPELLEE, *v*. TESTA, TAX COMMR., APPELLEE AND CROSS-APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Crutchfield Corp. v. Testa,* Slip Opinion No. 2016-Ohio-7760.]**

*Taxation—Commercial-activity tax ("CAT")—Physical presence is not necessary condition for imposing CAT because CAT's $500,000 sales-receipts threshold is adequate quantitative standard that ensures that taxpayer's nexus with Ohio is substantial—Burdens imposed by CAT on interstate commerce are not clearly excessive in relation to Ohio's legitimate interest in imposing CAT evenhandedly on sales receipts of in-state and out-of-state sellers—Board of Tax Appeals' decision affirming CAT assessments against appellant affirmed.*

(No. 2015-0386—Submitted May 3, 2016—Decided November 17, 2016.)

APPEAL and CROSS-APPEAL from the Board of Tax Appeals,

Nos. 2012-926, 2012-3068, and 2013-2021.

_____

**O'NEILL, J.**

{¶ 1} Appellant and cross-appellee, Crutchfield Corporation, appeals from the imposition of Ohio's commercial-activity tax ("CAT") on revenue it has earned from sales of electronic products that it ships into the state of Ohio. Crutchfield is based outside Ohio, employs no personnel in Ohio, and maintains no facilities in Ohio. The business Crutchfield does in this state consists solely of shipping goods from outside the state to its consumers in Ohio using the United States Postal Service or common-carrier delivery services. In this appeal, Crutchfield contests the issuance of CAT assessments against it, arguing that Ohio may not impose a tax on the gross receipts associated with its sales to Ohio consumers because Crutchfield lacks a "substantial nexus" with Ohio. Crutchfield argues that a substantial nexus within a state is a necessary prerequisite to imposing the tax under the federal dormant Commerce Clause. Further, citing case law interpreting this substantial-nexus requirement, Crutchfield argues that its nexus to Ohio is not sufficiently substantial because it lacks a "physical presence" in Ohio—i.e., property in the state or agents or employees acting in the state in connection with its sales.

{¶ 2} Appellee and cross-appellant, the tax commissioner, advances a two-prong defense. First, he argues that the Commerce Clause case law does not impose a physical-presence requirement and that as a result, the $500,000 sales-receipts threshold set forth in the Ohio CAT statute satisfies the Commerce Clause requirement of a substantial nexus. Second, even if the Commerce Clause does impose a physical-presence requirement, the tax commissioner argues, Crutchfield's computerized connections with Ohio consumers involve the presence of tangible personal property owned either by Crutchfield or by contractors acting specifically on Crutchfield's behalf and the presence of that property on computers located in Ohio constitutes physical presence in this state.

2

{¶ 3} We agree with the first prong of the tax commissioner's argument, and we therefore do not address the second one. Our reading of the case law indicates that the physical-presence requirement recognized and preserved by the United States Supreme Court *for purposes of use-tax collection* does not extend to business-privilege taxes such as the CAT. We further conclude that the statutory threshold of $500,000 of Ohio sales constitutes a sufficient guarantee of the substantiality of an Ohio nexus for purposes of the dormant Commerce Clause. We therefore affirm the decision of the Board of Tax Appeals ("BTA") and the assessments issued by the tax commissioner against Crutchfield.

### The CAT's Statutory Bright-Line-Presence Standard

{¶ 4} The CAT is imposed under R.C. 5751.02(A), which levies "a commercial activity tax on each person with taxable gross receipts for the privilege of doing business in this state." To determine what constitutes "taxable gross receipts," we look to R.C. 5751.01(G), which defines them as "gross receipts sitused to this state under section 5751.033 of the Revised Code." In the case of sales of tangible personal property like those made by Crutchfield, R.C. 5751.033(E) informs us that the sales are "sitused to this state if the property is received in this state by the purchaser." The statute specifies that when property is delivered "by motor carrier or by other means of transportation, the place at which such property is ultimately received after all transportation has been completed shall be considered the place where the purchaser receives the property." *Id.* It is the tax commissioner's position that by filling orders initiated on computers in Ohio and arranging for its products to be transported into Ohio, the receipts from Crutchfield's sales qualify as "taxable gross receipts" under this provision.

{¶ 5} Next, we turn back to the imposition of the CAT under R.C. 5751.02(A) on the "privilege of doing business." The statute defines "doing business" as "engaging in any activity, whether legal or illegal, that is conducted

for, or results in, gain, profit, or income, at any time during a calendar year." Specifically, the statute states that the CAT is imposed on "persons with substantial nexus with this state," *id.*, a phrase defined at R.C. 5751.01(H)(3) to include persons having a "bright-line presence in this state." R.C. 5751.01(I)(3) includes within the bright line of taxability those persons having "during the calendar year taxable gross receipts of at least five hundred thousand dollars."

{¶ 6} There are other statutory bases for imposing the CAT, but the bright-line standard of receipts from sales into the state that amount to $500,000 per calendar year is the one that is relevant in this appeal. We refer to this basis for imposing the CAT as the $500,000 sales-receipts threshold in this opinion.

**Factual Background**

{¶ 7} This is an appeal from a decision issued by the BTA on February 26, 2015, in consolidated case Nos. 2012-926, 2012-3068, and 2013-2021. The three BTA cases were appeals from three separate final determinations of the tax commissioner:

- In BTA case No. 2012-926, the tax commissioner issued 19 assessments covering audit periods that extended from July 1, 2005 (the inception of the CAT) to June 30, 2010. The assessments amounted to $65,689 in tax, $5,659.94 in preassessment interest, and $37,128.23 in penalties, for a total assessed amount of $106,239.43.

- In BTA case No. 2012-3068, the tax commissioner issued five assessments for five quarterly periods beginning July 2010 and ending September 2011. The assessments were based on estimated tax amounts of $10,000 per period; the total amount assessed with interest and penalties was $60,988.50.

- In BTA case No. 2013-2021, the commissioner issued assessments for the last quarter of 2011 and the first two quarters of 2012 based on estimated tax amounts of $10,000 per quarter. The assessments consisted of tax plus interest and penalties for a total amount of $39,703.01.

{¶ 8} In each instance, Crutchfield contested the original assessments, advancing statutory and constitutional challenges. The tax commissioner issued three final determinations covering all the assessments.

{¶ 9} The final determinations are substantially the same. Each final determination notes that Crutchfield is "a corporation based in Virginia," that it functions as "a direct marketer that sells consumer electronics through the Internet from locations entirely outside of Ohio," and that it "ships its merchandise via the U.S. Mail or using common carriers." The final determinations rejected Crutchfield's objections on the grounds that the taxpayer "has 'substantial nexus with this state,' as that phrase is defined in R.C. 5751.01(H)," inasmuch as Crutchfield "satisfies the third and/or fourth conditions in that division, and therefore is a person on whom the tax is levied."[1]

{¶ 10} Next, the final determinations found that Crutchfield "sells consumer goods through orders received via the Internet and telephone orders," noting that Crutchfield "admits that it has customers in Ohio to which it sells and ships these goods." After further discussion of the relevant statutory provisions, the final determinations state that Crutchfield's "overriding assertion is that the Commerce Clause of the United States Constitution precludes the State of Ohio from subjecting it to the commercial activity tax" and that Crutchfield maintains that "the nexus required is a 'physical presence' in the taxing state, which it alleges it did not have during the assessed periods."

{¶ 11} In all three cases, the tax commissioner found that Crutchfield had "more than $500,000 in sales to customers in Ohio" and that Crutchfield "failed to file and pay the commercial activity tax." The commissioner made no factual

---

[1] The "third condition," R.C. 5751.01(H)(3), refers to the bright-line-presence provision at division (I) of the section, which imposes the tax given $500,000 in sales receipts; the "fourth condition" is a catchall at R.C. 5751.01(H)(4) that applies when a taxpayer "[o]therwise has nexus with this state to an extent that the person can be required to remit the tax imposed under this chapter under the Constitution of the United States."

finding regarding physical presence but instead noted that he lacked authority to "adjudicate the constitutionality of th[e] statutes." At the BTA, Crutchfield stipulated that it did "not contest the amounts of estimated Ohio Commercial Activity Tax set forth on the assessments" while reasserting that it was immune from the tax.

## Proceedings at the BTA

{¶ 12} At the BTA, Crutchfield offered the testimony of two company employees, its senior vice president of finance and its director of Internet marketing. The former testified concerning the company's active intent to avoid nexus anywhere but in its home state of Virginia. The latter testified concerning the general character of Crutchfield's Internet marketing efforts, with the thrust being that no specific effort was targeted at Ohio.

{¶ 13} With respect to the constitutional issues, the parties offered expert opinions concerning Crutchfield's promotion of its products and filling orders in conjunction with its customers' use of computers in Ohio. The tax commissioner offered written reports of two marketing experts, Ashkan Soltani and Joseph Turow, while Crutchfield offered the written report of its own marketing expert, Eric Goldman. The conflicting expert opinions addressed the tax commissioner's theory that interstate sales through the Internet involved "physical presence" because of the physical realities of online transactions.

## Crutchfield's Arguments and the BTA's Decision

{¶ 14} Before the BTA, Crutchfield argued that its "gross receipts * * * cannot be taxed consistent with the Constitution," inasmuch as Crutchfield "lacks the in-state business activity required by the Commerce Clause." Crutchfield also argued that "[i]n addition to violating the Constitution," the assessments against

6

Crutchfield violated the provision of the CAT statute that excluded receipts when the tax could not constitutionally be applied.[2]

**{¶ 15}** In its decision, the BTA rejected Crutchfield's reading of the statutory provisions by relying on the plain meaning of the bright-line $500,000 sales-receipts threshold and citing its earlier resolution of the issue in *L.L. Bean, Inc. v. Levin*, BTA No. 2010-2853, 2014 Ohio Tax LEXIS 1539 (Mar. 6, 2014). BTA Nos. 2012-926, 2012-3068, and 2013-2021, 2015 WL 1048564 or 1048699, *4 (Feb. 26, 2015). As for Crutchfield's constitutional challenge, the board noted that it lacked jurisdiction to decline to apply statutes on constitutional grounds. *Id.* at *3. The BTA therefore affirmed the assessments issued by the tax commissioner.

### Standard of Review

**{¶ 16}** This appeal presents questions of statutory construction and the constitutional validity of applying the CAT statute. These constitute legal questions, which we decide de novo without deference, *Akron Centre Plaza, L.L.C. v. Summit Cty. Bd. of Revision*, 128 Ohio St.3d 145, 2010-Ohio-5035, 942 N.E.2d 1054, ¶ 10. As for entertaining the Commerce Clause challenge to the application of the CAT statute, "the BTA receives evidence at its hearing, but we determine the facts necessary to resolve the constitutional question." *MCI Telecommunications Corp. v. Limbach*, 68 Ohio St.3d 195, 198, 625 N.E.2d 597 (1994).

### Crutchfield Properly Raised its Constitutional Challenge to the CAT Assessments

**{¶ 17}** In his cross-appeal, the tax commissioner renews an argument that we already rejected when we denied the commissioner's motion to dismiss. *See*

---

[2] Crutchfield's BTA brief quoted former R.C. 5751.01(F)(2)(jj) (now (F)(2)(ll)), which excludes from the statutory definition of "gross receipts" "[a]ny receipts for which the tax imposed by this chapter is prohibited by the constitution or laws of the United States or the constitution of this state."

143 Ohio St.3d 1414, 2015-Ohio-2911, 34 N.E.3d 928. Namely, the commissioner contends that "Crutchfield has failed to impart jurisdiction on the BTA, and therefore derivatively on this Court, to consider its as-applied constitutional challenges." While the tax commissioner is correct that a failure to specify an as-applied challenge in the notice of appeal to the BTA would bar that kind of relief, the commissioner is wrong about the content of the notices of appeal that Crutchfield filed at the BTA. Each notice of appeal states in the sixth assignment of error that "[a]pplication of the CAT to Crutchfield would violate the Company's rights under the Commerce Clause of the United States Constitution." The notices of appeal also state that "Crutchfield is protected from imposition of the Commercial Activity Tax ('CAT') under the Commerce Clause of the United States Constitution" and that "[a]s it applies to gross receipts taxes like the CAT, the [Supreme] Court has made clear that the physical presence standard is only satisfied through in-state activities by, or on behalf of, the taxpayer that are significantly associated with its ability to establish and maintain a market in the state."

{¶ 18} Taken together, these assertions adequately specify the constitutional error. We do not recognize any significance to the distinction between a facial or as-applied challenge in the present context; we find that the notices of appeal suffice to place both theories at issue, inasmuch as any facial challenge under the Commerce Clause nexus standard would necessarily have to demonstrate that the statute could not constitutionally be applied to Crutchfield itself; that would be a necessary predicate for showing that the statute is unconstitutional in all its applications. *See Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, 836 N.E.2d 1165, ¶ 37 ("A facial challenge to a statute is the most difficult to bring successfully because the challenger must establish that there exists no set of circumstances under which the statute would be valid").

**The CAT Statute Manifests Clear Legislative Intent to Impose the CAT
Based on the $500,000 Sales-Receipts Threshold**

{¶ 19} Crutchfield argues that the CAT statute may be construed and applied to avoid the constitutional infirmity that it raises here, but these arguments do not withstand close scrutiny.

{¶ 20} First, Crutchfield argues that this court should strictly construe "doing business" under R.C. 5751.02(A) to avoid the constitutional infirmity, by holding that Crutchfield's lack of physical presence means that it was not "doing business" in Ohio. But "doing business" is defined in R.C. 5751.02(A) solely for the purpose of establishing that "privilege of doing business," the incidence of the tax, broadly includes profit-seeking activities. Interpreting the term "doing business" to exclude situations in which there is no physical presence simply would not be consistent with the broad intent reflected in the language of the provision.

{¶ 21} Moreover, after defining "doing business," R.C. 5751.02(A) proceeds to explicitly impose the tax on "persons with substantial nexus," which includes, under R.C. 5751.01(I)(3), those persons who satisfy the $500,000 sales-receipts threshold. Thus, far from avoiding the constitutional infirmity, the "doing business" language of R.C. 5751.02(A) invites the constitutional challenge to be considered on its own terms.

{¶ 22} Crutchfield asserts that the tax commissioner's interpretation of R.C. 5751.02(A) "read[s] out of the statute [its] primary, in-state activities requirement." But the statute speaks of taxing "the privilege of doing business in this state" without stating an "in-state activities requirement," much less any reference to the additional requirement of physical presence within the state. Nor is there any ambiguity to be interpreted in Crutchfield's favor in this section; the reference to a "physical presence" requirement is unambiguously absent, and the

insistence that the tax *is* imposed on persons based on the $500,000 sales-receipts threshold is unambiguously incorporated by reference.

{¶ 23} Second, Crutchfield contends that former R.C. 5751.01(F)(2)(jj) (now (F)(2)(ll)) should be construed to preempt imposition of the CAT based on the $500,000 sales-receipts threshold. That provision states that " '[g]ross receipts' excludes * * * [a]ny receipts for which the tax imposed by this chapter is prohibited by the constitution or laws of the United States or the constitution of this state." According to Crutchfield, the "only reasonable interpretation of the exclusion is that the General Assembly wished to avoid conflict with all limitations on the State's authority to impose a tax measured by gross receipts, including restrictions arising under the substantial nexus requirement of the dormant Commerce Clause."

{¶ 24} We disagree. The proposed interpretation is irreconcilable with the insistence in R.C. 5751.02(A) that the "[p]ersons on which the commercial activity tax is levied *include, but are not limited to*, persons with substantial nexus with this state." (Emphasis added.) This language invokes by reference the $500,000 sales-receipts threshold for imposing the tax as part of the definition of "substantial nexus with this state" under R.C. 5751.01(H), but the language then proceeds to express legislative intent that the tax *not even be bound by that expansive definition*. This cannot be squared with attributing to the legislature an intent to acquiesce in the substantial-nexus/physical-presence test that Crutchfield advocates here.

{¶ 25} Moreover, R.C. 5751.01(F)(2)(ll) excludes receipts from the "gross receipts" definition; *it does not create an exception to the statute's substantial-nexus definition*. The exclusion requires the tax commissioner to disregard any receipts that by their character, *or the character of the taxpayer itself*, are immune or exempt from state taxation as a matter of federal constitutional or statutory law. *See NLO, Inc. v. Limbach*, 66 Ohio St.3d 389, 394, 613 N.E.2d 193 (1993) ("The

federal Supremacy Clause, Clause 2, Article VI, United States Constitution, prevents the state from taxing the federal government and its instrumentalities"). Under the statute's definition of "[e]xcluded person," R.C. 5751.01(E), "the state and its agencies, instrumentalities, or political subdivisions" are not subject to the CAT, R.C. 5751.01(E)(8), but the definition makes no mention of the federal government and its instrumentalities. As a result, it is the gross-receipts exclusion at R.C. 5751.01(F)(2)(ll) that removes the federal government and its instrumentalities from the operation of the CAT. It is unnecessary to find additional legislative purposes for the provision.

{¶ 26} For the foregoing reasons, we reject Crutchfield's statutory challenges to the CAT assessments.

### "Substantial Nexus" Does Not Require a Taxable "Local Incident"

{¶ 27} Our analysis of this appeal under the Commerce Clause begins with a "before and after" view of the case law. The pivot point is *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), which altered how the dormant Commerce Clause interacts with a state's taxing powers.

{¶ 28} Before *Complete Auto*, we characterized the United States Supreme Court case law as "enigmatic," embodying "[a]t the opposite ends of the conceptual spectrum * * * two competing * * * propositions that (1) a state may not levy a tax for the privilege of engaging in interstate commerce * * * and (2) interstate commerce must pay its way in relation to the immediate benefits and protections afforded it by the state." *United Air Lines, Inc. v. Porterfield*, 28 Ohio St.2d 97, 102, 276 N.E.2d 629 (1971). Whatever other effect it had, *Complete Auto* abolished the first of these two principles by embracing the doctrine of those cases in which the high court had "rejected the proposition that interstate commerce is immune from state taxation." *Complete Auto* at 288.

{¶ 29} In place of the old conceptual framework, the high court articulated the now familiar four-prong test, under which a state tax is valid if is "applied to

an activity with a substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State." *Id.* at 279. It is, of course, the requirement of a substantial nexus that is at issue in this appeal.

{¶ 30} The main flaw in Crutchfield's argument lies in its reliance on case law that embodies the since-discarded theory of interstate-commerce immunity from state taxation. Namely, Crutchfield cites cases in which a taxable "local incident" was required as a predicate for state taxation, because the privilege of engaging in interstate commerce was regarded as immune from state taxation. *See also Freeman v. Hewit*, 329 U.S. 249, 252, 254, 67 S.Ct. 274, 91 L.Ed. 265 (1946) ("by its own force," the dormant Commerce Clause "created an area of trade free from interference by the States," with the result that the Commerce Clause barred "a levy upon the very process of commerce across State lines"); *Spector Motor Serv., Inc. v. O'Connor*, 340 U.S. 602, 608, 71 S.Ct. 508, 95 L.Ed. 573 (1951) (invalidating tax that was "placed unequivocally upon the corporation's franchise for the privilege of carrying on exclusively interstate transportation in the state"). Crutchfield then equates the taxable "local incident" required in earlier cases with "substantial nexus" under *Complete Auto*.

{¶ 31} Crutchfield relies in particular on *Norton Co. v. Dept. of Revenue*, 340 U.S. 534, 71 S.Ct. 377, 95 L.Ed. 517 (1951). In *Norton*, a Massachusetts manufacturer had a Chicago office through which it made sales in Illinois; it separately engaged in a purely mail-order business in which in-state customers mailed an order to Massachusetts that was then filled by mailing the ordered items back to Illinois. Illinois assessed a retail-business tax measured by gross receipts against the manufacturer, which protested that it was engaged in interstate commerce. The manufacturer's argument was rejected in state court.

{¶ 32} On appeal, the Supreme Court noted that the state statute exempted " 'business in interstate commerce' as required by the Constitution." *Id.* at 535-

12

536. The court vacated the state court judgment and remanded the cause to distinguish those transactions involving purely mail-order business; once identified, those transactions would be held immune from the state tax. *Id.* at 539. The linchpin of the court's analysis is instructive:

> Where a corporation chooses to stay at home in all respects except to send abroad advertising or drummers to solicit orders which are sent directly to the home office for acceptance, filling, and delivery back to the buyer, it is obvious that the State of the buyer has no local grip on the seller. *Unless some local incident occurs sufficient to bring the transaction within its taxing power*, the vendor is not taxable. *McLeod v. [J.E.] Dilworth Co.*, 322 U.S. 327 [64 S.Ct. 1023, 88 L.Ed. 1304 (1944)]. Of course, a state imposing a sales or use tax can more easily meet this burden, because the impact of those taxes is on the local buyer or user. Cases involving them are not controlling here, for this tax falls on the vendor.

(Emphasis added.) *Norton* at 537.

{¶ 33} At first blush, this passage could be mistaken for a statement about the substantiality of nexus, and that is precisely the error that Crutchfield makes. Read in context, however, the passage does not at all comment on "substantial nexus"; instead, it reflects the interstate-commerce-immunity theory, whereby the sales made by or through local agents in the state—such as the purchases in Ohio of Crutchfield's products—are taxable as local commerce, but the strictly mail-order transactions are immune as purely interstate commerce.

{¶ 34} Crutchfield maintains that the local incident in a case like *Norton* equates to the substantial-nexus requirement of the *Complete Auto* test. That is

wrong. *Complete Auto* abolished the prohibition against levying a tax on the privilege of engaging in interstate commerce, and the Supreme Court's articulation of the substantial-nexus test was not intended to resurrect it.

{¶ 35} Essentially, the same is true for the other pre-*Complete Auto* cases cited and relied upon by Crutchfield. In *Standard Pressed Steel Co. v. Washington Dept. of Revenue*, 419 U.S. 560, 562-563, 95 S.Ct. 706, 42 L.Ed.2d 719 (1975), the high court rejected the proposed analogy to *Norton* on the grounds that *Norton* presented the questions whether the in-state activity related to the interstate aspect of the business and whether the taxpayer had to prove the absence of such a relationship in order to "establish[ ] its immunity" from state taxation; by contrast, Standard Pressed Steel had an employee "with a full-time job within the State" that consisted of maintaining the seller's relationship with its in-state customer, Boeing. In *Gen. Motors Corp. v. Washington*, 377 U.S. 436, 84 S.Ct. 1564, 12 L.Ed.2d 430 (1964), the high court invoked the proposition as " 'beyond dispute * * * that a state may not lay a tax on the "privilege" of engaging in interstate commerce.' " *Id.* at 446, quoting *Northwestern States Portland Cement Co. v. Minnesota*, 358 U.S. 450, 458, 79 S.Ct. 357, 3 L.Ed.2d 421 (1959). But the court then distinguished the facts before it as involving taxation of the "in-state activities" performed by "out-of-state personnel"; though maintaining no office in the state, General Motors employees nonetheless regularly performed substantial services within the state to maintain dealer contacts. *Id.* at 447.

{¶ 36} In *Field Ents., Inc. v. Washington*, 47 Wash.2d 852, 289 P.2d 1010 (1955), *summarily aff'd,* 352 U.S. 806, 77 S.Ct. 55, 1 L.Ed.2d 39 (1956), a Delaware corporation published *World Book Encyclopedia* and *Childcraft*; it maintained a Seattle office, where its representative took orders that were then filled outside the state with books mailed directly to the customers. The case was decided on the Commerce Clause ground that the in-state activity was sufficient,

so that Washington's business tax was not being laid on the privilege of engaging in interstate commerce. Although the interstate-commerce-immunity rationale does not appear on the face of the decision, it is manifest in its reliance on the earlier decision in *B.F. Goodrich Co. v. State*, 38 Wash.2d 663, 231 P.2d 325 (1951), which—although not itself explicitly mentioning interstate-commerce immunity—exhibits its adherence to the doctrine by its reliance on the United States Supreme Court's decision in *Norton*.

### *Quill* Does Not Apply to Business-Privilege Taxes, Whether Measured by Income or by Receipts

{¶ 37} The proper focal point of discussion of the physical-presence standard in the case law is *Quill Corp. v. North Dakota*, 504 U.S. 298, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992). That is so because *Quill* explicitly considers the substantial-nexus prong of the Commerce Clause test in light of the change in that test effected by *Complete Auto* and finds the need for a physical presence under the circumstances presented in *Quill*.

{¶ 38} *Quill* involved a challenge to the typical state-law requirement that out-of-state sellers act as agents of the state by charging, collecting, and remitting sales or use taxes[3] incurred by in-state buyers when they ordered items for delivery into the state. In *Quill*, North Dakota imposed the administrative obligation to charge, collect, and remit taxes on persons who " 'engage[ ] in regular or systematic solicitation of a consumer market in th[e] state.' " *Id.* at 302-303, quoting N.D.Century Code 57-40.2-01(6). The law thereby swept within its ambit mail-order firms that solicited business through advertising within the state. *Id.* at 303. When Quill resisted, a trial court upheld its position against

---

[3] "As a corollary to its sales tax, North Dakota imposes a use tax upon property purchased for storage, use, or consumption within the State." *Quill* at 302; *accord Proctor & Gamble Co. v. Lindley*, 17 Ohio St.3d 71, 73, 477 N.E.2d 1109 (1985) ("R.C. 5739.02 imposes an excise tax on each retail sale made in Ohio, with R.C. 5741.02 imposing a complementary excise tax on the use of tangible personal property in Ohio").

the state on the authority of *Natl. Bellas Hess, Inc. v. Dept. of Revenue of State of Illinois*, 386 U.S. 753, 87 S.Ct. 1389, 18 L.Ed.2d 505 (1967), which had held that requiring a Missouri mail-order business to collect the Illinois use tax violated due-process and Commerce Clause standards. The state supreme court reversed, allowing imposition of the collection responsibility on Quill.

{¶ 39} On appeal, the United States Supreme Court reversed. First, the high court rejected the due-process ground of the *Bellas Hess* holding, concluding that the activity by which North Dakota sought to impose the obligation constituted purposeful availment of the state's benefits and protections. *Quill* at 307-308. As for the Commerce Clause ground, however, the *Quill* court reaffirmed the holding of *Bellas Hess* and prohibited North Dakota's imposition of the collection responsibility. *Quill* at 310-318.

{¶ 40} With respect to Commerce Clause case law, the court in *Quill* discerned that the substantial-nexus test carried forward the limitation, set forth in *Bellas Hess*, that out-of-state sellers could incur use-tax compliance obligations based only on physical presence in the state, *Bellas Hess* at 758 (distinguishing "between mail order sellers with retail outlets, solicitors, or property within a State, and those who do no more than communicate with customers in the State by mail or common carrier as part of a general interstate business"). *Quill* at 311-313.

{¶ 41} The Supreme Court had concluded in *Bellas Hess* that this continued limitation was justified by the burdens imposed on interstate commerce by multiple jurisdictions imposing use taxes with differing rates, exemptions, and record-keeping requirements. *Bellas Hess* at 759-760. In *Quill*, the court noted that the "settled expectations" of mail-order sellers arising from *Bellas Hess* may have facilitated such interstate business and that the physical-presence rule was therefore worth preserving. 504 U.S. at 316, 112 S.Ct. 1904, 119 L.Ed.2d 91.

**{¶ 42}** We hold today that although a physical presence in the state may furnish a sufficient basis for finding a substantial nexus, *Quill*'s holding that physical presence is a *necessary condition for imposing the tax obligation* does not apply to a business-privilege tax such as the CAT, as long as the privilege tax is imposed with an adequate quantitative standard that ensures that the taxpayer's nexus with the state is substantial. Here, that quantitative standard is the $500,000 sales-receipts threshold.

**{¶ 43}** We discern the basis for our holding in *Quill* itself and the related United States Supreme Court precedents. First, *Quill* contains two passages that indicate that the physical-presence standard has not been articulated as a nexus requirement in the business-privilege-tax situation. In rejecting North Dakota's argument that the court had eschewed such a "bright-line test" as physical presence, the Supreme Court conceded that "we have not, in our review of other types of taxes, articulated the same physical-presence requirement that *Bellas Hess* established for sales and use taxes"; the court then stated that "that silence does not imply repudiation of the *Bellas Hess* rule." *Quill* at 314. The contrast was drawn even more trenchantly in the concluding passage of the opinion, in which the court noted that "our cases subsequent to *Bellas Hess* and concerning other types of taxes" did not "adopt[ ] a similar bright-line, physical-presence requirement"; the court then observed that "our reasoning in those cases does not compel that we now reject the *rule that* Bellas Hess *established in the area of sales and use taxes*." (Emphasis added.) *Quill* at 317.

**{¶ 44}** Second, the case law post-*Complete Auto* establishes that for purposes of applying the four-prong Commerce Clause test, business-privilege taxes should be distinguished from transaction taxes such as the sales and use tax. In *Oklahoma Tax Comm. v. Jefferson Lines, Inc.*, 514 U.S. 175, 115 S.Ct. 1331, 131 L.Ed.2d 261 (1995), a Minnesota bus company had collected and remitted the Oklahoma sales tax on transportation services for trips within Oklahoma but not

for trips originating in Oklahoma and terminating outside the state. In bankruptcy proceedings, the state attempted to collect the unremitted tax through a vendor assessment; there, the state confronted a Commerce Clause defense. One aspect of that defense was that the Commerce Clause required the sales tax to be apportioned to apply only to mileage within Oklahoma itself, *see Cent. Greyhound Lines, Inc. v. Mealey*, 334 U.S. 653, 68 S.Ct. 1260, 92 L.Ed. 1633 (1948) (holding unconstitutional an unapportioned tax on gross receipts of company that sold tickets for interstate bus travel).

{¶ 45} The United States Supreme Court rejected that position, relying principally on the different identities of the taxpayer: the interstate seller of the bus ticket, on whom a gross-receipts tax is imposed, and the in-state purchaser of the ticket, on whom a sales tax is imposed. The high court stated:

> [*Central Greyhound* and *Jefferson Lines*] involve the identical services, and apportionment by mileage per State is equally feasible in each. But the two diverge crucially in the identity of the taxpayers and the consequent opportunities that are understood to exist for multiple taxation of the same taxpayer. *Central Greyhound* did not rest simply on the mathematical and administrative feasibility of a mileage apportionment, but on the Court's express understanding that the seller-taxpayer was exposed to taxation by New Jersey and Pennsylvania on portions of the same receipts that New York was taxing in their entirety. *The Court thus understood the gross receipts tax to be simply a variety of tax on income*, which was required to be apportioned to reflect the location of the various interstate activities by which it was earned.

(Emphasis added.) *Jefferson Lines* at 190. *Accord Comptroller of Treasury of Maryland v. Wynne*, ___ U.S. ___, 135 S.Ct. 1787, 1795, 191 L.Ed.2d 813 (2015) (seeing "no reason why the distinction between gross receipts and net income should matter" in evaluating Commerce Clause challenge to imposition of a state tax).

**{¶ 46}** Thus, *Jefferson Lines* puts the United States Supreme Court on record that for purposes of applying the *Complete Auto* test, a gross-receipts tax on the interstate seller should be viewed as occupying the same constitutional category as an income tax on that same seller—whereas the sales tax on the in-state purchaser occupies a different category. That reasoning tracks the background and purpose of Ohio's CAT, which, enacted to replace the former corporate-franchise tax, is imposed on the privilege of engaging in income-producing activity but is measured by gross receipts instead of income. *See Navistar, Inc. v. Testa*, 143 Ohio St.3d 460, 2015-Ohio-3283, 39 N.E.3d 509, ¶ 1, 8; *Beaver Excavating Co. v. Testa*, 134 Ohio St.3d 565, 2012-Ohio-5776, 983 N.E.2d 1317, ¶ 23-24.

**{¶ 47}** Under these precepts, we follow our own lead along with that of most state courts that, post-*Quill*, have explicitly rejected the extension of the *Quill* physical-presence standard to taxes on, or measured by, income. *See Couchot v. State Lottery Comm.*, 74 Ohio St.3d 417, 425, 659 N.E.2d 1225 (1996) ("There is no indication in *Quill* that the Supreme Court will extend the physical-presence requirement to cases involving taxation measured by income derived from the state"); *Capital One Bank v. Commr. of Revenue*, 453 Mass. 1, 13, 899 N.E.2d 76 (2009) (declining to "expand the [United States Supreme] Court's reasoning [in *Quill*] beyond its articulated boundaries" and upholding imposition of tax on out-of-state banks in relation to in-state servicing of credit cards based on the volume of business conducted and profits realized); *MBNA Am. Bank, N.A. v. Indiana Dept. of State Revenue*, 895 N.E.2d 140, 143 (Ind.Tax 2008) ("Based

on [*Quill*] and a thorough review of relevant case law, this Court finds that the Supreme Court has not extended the physical presence requirement beyond the realm of sales and use taxes"); *KFC Corp. v. Iowa Dept. of Revenue*, 792 N.W.2d 308, 328 (Iowa 2010) ("We * * * doubt that the United States Supreme Court would extend the 'physical presence' rule outside the sales and use context of *Quill*"). *But see J.C. Penney Natl. Bank v. Johnson*, 19 S.W.3d 831, 839 (Tenn.App.1999), in which an intermediate appellate court, rejecting the state's argument that *Quill* did not apply, overruled the imposition of the state's franchise and excise taxes on a bank in relation to the servicing of credit cards issued to Tennessee residents, on the ground that the bank had no offices or agents in the state.[4]

{¶ 48} We recognize that Crutchfield seeks to take refuge in a handful of state court decisions addressing gross-receipts taxes, but we find that those decisions are unavailing for reasons we discuss in the next section.

### Under *Tyler Pipe*, Physical Presence Is a Sufficient but not Necessary Condition for Imposing a Business-Privilege Tax

{¶ 49} We are now in a position to fully address Crutchfield's argument that "[f]or more than 50 years, in a series of cases decided both before and after *Complete Auto*, the Supreme Court has made clear that a state's authority to impose a tax measured by gross receipts depends upon the taxpayer conducting business activities within the state that assist the company to develop and maintain a market there." At oral argument, although Crutchfield stated that it was not arguing that the *Quill* standard per se applies to a privilege tax, it nonetheless invited us to read *Tyler Pipe Industries, Inc. v. Washington State Dept. of Revenue*, 483 U.S. 232, 107 S.Ct. 2810, 97 L.Ed.2d 199 (1987), as

---

[4] Crutchfield characterizes the Tennessee tax as a gross-receipts tax, but at least one commentator has noted that the case involves a net-income tax, Michael T. Fatale, *State Tax Jurisdiction and the Mythical "Physical Presence" Constitutional Standard*, 54 Tax Lawyer 105, 139 (Fall 2000).

recognizing a "very similar" type of physical-presence standard in the privilege-tax context.

{¶ 50} We disagree. The most accurate characterization of *Tyler Pipe*, and one that is fully consistent with *Complete Auto* and with the *Quill* court's own reading of the case law, is that a taxpayer's physical presence in a state constitutes a *sufficient* basis for the state to impose a business-privilege tax. We conclude that in construing *Tyler Pipe*, it is unwarranted to leap from the principle that physical presence is a sufficient condition for imposing a tax to the logically distinct proposition that physical presence is a *necessary* condition to impose the tax.[5] And as discussed, although *Quill* recognized physical presence as a necessary condition for imposing the obligation to collect use taxes, that requirement does not extend to business-privilege taxes as a general matter.

{¶ 51} This conclusion derives from not just *Tyler Pipe* but also the state court decisions addressing gross-receipts taxes: in each case, a physical presence was found that in turn furnished a sufficient condition for upholding the imposition of the state tax. *Koch Fuels, Inc. v. Clark*, 676 A.2d 330, 334 (R.I. 1996) (noting that the taxpayer "shipped approximately 25.6 million gallons of oil into Rhode Island" over which it "retained title, possession and risk of loss * * * up until the point it reached the flange in Providence"); *Saudi Refining, Inc. v. Dir. of Revenue*, 715 A.2d 89, 96 (Del.Super. 1998) (noting that the taxpayer had "a significantly greater presence in Delaware than [the taxpayer in *Koch Fuels*]

---

[5] Crutchfield seizes upon a passage that the United States Supreme Court quoted from the state supreme court decision to bolster its claim: " '[T]he crucial factor governing nexus is whether the activities performed in this state on behalf of the taxpayer are significantly associated with the taxpayer's ability to establish and maintain a market in this state for the sales.' " *Tyler Pipe* at 250, quoting *Tyler Pipe Industries, Inc. v. State Dept. of Revenue*, 105 Wash.2d 318, 323, 715 P.2d 123 (1986). But this passage does not, contrary to Crutchfield's suggestion, articulate a constitutional standard for nexus; instead, it states the state-law standard embodied in the pertinent state nexus regulation. *See Tyler Pipe*, 105 Wash.2d at 233, 715 P.2d 123, citing Wash.Adm.Code 458-20-193B. The constitutional holding is simply that such a connection is sufficient under the Commerce Clause.

did in Rhode Island"); *Ariz. Dept. of Revenue v. O'Connor, Cavanagh, Anderson, Killingsworth & Beshears, P.A.*, 192 Ariz. 200, 206, 963 P.2d 279 (App.1997) (detailing Arizona contacts of Indiana seller, including installation activity of its agents in the state, that would permit imposition of Arizona gross-receipts tax on that seller); *Short Bros. (USA), Inc. v. Arlington Cty.*, 244 Va. 520, 526, 423 S.E.2d 172 (1992) (taxpayer chose the taxing jurisdiction as its place of business and conducted all its revenue-generating operations from that office). Given our reading of the United States Supreme Court cases, there is no reason for us to view those decisions as authority for the proposition that physical presence would have been a necessary condition as well.

**The $500,000 Sales-Receipts Threshold Adequately Ensures Substantial Nexus for Purposes of Imposing the CAT**

{¶ 52} The final point of our analysis has been implicit in some of our earlier discussion, but we make it explicit here. We hold that the $500,000 sales-receipts threshold complies with the substantial-nexus requirement of the *Complete Auto* test.

{¶ 53} In so holding, we express our view that the quantitative standard is necessary to make the CAT applicable to a remote seller such as Crutchfield, because the Commerce Clause standard does require the nexus to be "substantial." This means that in order to render receipts susceptible to taxation by Ohio, the Commerce Clause requires more than the " 'definite link' " to this state, or the " 'purpose[ful] avail[ment]' " of Ohio's protections, that would satisfy due process, *Corrigan v. Testa*, __ Ohio St.3d __, 2016-Ohio-2805, __ N.E.3d __, ¶ 30, 32, quoting *Quill*, 504 U.S. at 306, 307, 112 S.Ct. 1904, 119 L.Ed.2d 91. The United States Supreme Court has recently reiterated:

> By prohibiting States from discriminating against or *imposing excessive burdens on interstate commerce* without congressional

22

approval, [the dormant Commerce Clause] strikes at one of the chief evils that led to the adoption of the Constitution, namely, state tariffs and other laws that burdened interstate commerce.

(Emphasis added.) *Wynne*, ___ U.S. ___, 135 S.Ct. at 1794, 191 L.Ed.3d 813.

{¶ 54} In applying the substantial-nexus standard without *Quill*'s physical-presence requirement, we take recourse to more general principles for applying the Commerce Clause limitation. As a general matter, when a state statute "regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church*, 397 U.S. 137, 145-146, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970). Obviously the imposition of the CAT on remote sellers has an effect on interstate commerce, and Ohio must assure that the adverse impact does not become "clearly excessive" in relation to the legitimate exercise of its taxing authority. Were the state to tax all receipts without any regard for the volume of Ohio sales, the CAT could become clearly excessive as to a business with a very small amount of such receipts. The General Assembly has sensibly attempted to foreclose that possibility by setting a minimum sales-receipts threshold.

{¶ 55} Crutchfield points out that the number chosen by the General Assembly, $500,000, can be seen as arbitrary to some degree, but no reason is advanced why a higher number ought to have been selected.[6] Instead, Crutchfield relies on the physical-presence requirement, which we have determined is not a

---

[6] The $150,000 threshold, which under R.C. 5751.04(B) is the usual amount that triggers the CAT registration requirement, is not at issue in this appeal. Crutchfield has not raised the point, and even assuming that the $150,000 threshold might apply to an out-of-state retailer like Crutchfield, Crutchfield would have no standing to advance such a claim because it accepts the premise that it had receipts in excess of the $500,000 threshold.

necessary condition here.  Although any threshold amount, whether selected by the legislature or the courts, may "seem to reasonable and intelligent persons to represent the drawing of artificial and arbitrary boundaries or lines," we have recognized that the drawing of such lines is justified for the purpose of defining the legal obligations of the taxpaying public. *Powhatan Mining Co. v. Peck*, 160 Ohio St. 389, 394, 116 N.E.2d 426 (1953); *In re Sears' Estate*, 172 Ohio St. 443, 448, 178 N.E.2d 240 (1961).

{¶ 56} We hold that given the $500,000 sales-receipts threshold, the burdens imposed by the CAT on interstate commerce are not "clearly excessive" in relation to the legitimate interest of the state of Ohio in imposing the tax evenhandedly on the sales receipts of in-state and out-of-state sellers.  As a result, the tax satisfies the substantial-nexus standard under the dormant Commerce Clause, and we decline to address the tax commissioner's alternative argument that the physical-presence standard has been satisfied.

### Conclusion

{¶ 57} For the foregoing reasons, we affirm the decision of the BTA and uphold the CAT assessments against Crutchfield.

Decision affirmed.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, and FRENCH, JJ., concur.

KENNEDY, J., dissents, with an opinion joined by LANZINGER, J.

_____

**KENNEDY, J., dissenting.**

{¶ 58} This case is not about the wisdom of imposing a business-privilege tax on Ohio corporations or the constitutionality of the commercial-activity tax ("CAT") in general.  This case is about whether online purchases made by Ohio residents—or even a single Ohio resident—from an out-of-state business create a substantial nexus between that business and Ohio for purposes of the dormant Commerce Clause if the transactions meet the statutory threshold of $500,000 in

Ohio sales. While I am sympathetic to all Ohio-based businesses that must pay a business-privilege tax such as the CAT, this court nevertheless should follow the law as it exists today. Therefore, I must dissent.

{¶ 59} The power to regulate interstate commerce is given to Congress under Article I, Section 8, Clause 3 of the United States Constitution. If Congress is silent—neither preempting nor consenting to state regulation—and a state attempts to regulate in the face of that silence, the United States Supreme Court, going back to *Gibbons v. Ogden*, 22 U.S. 1, 231-32, 238-39, 6 L.Ed. 23 (1824) (Johnson, J., concurring), has interpreted the Commerce Clause to limit state regulation of interstate commerce through what has come to be known as the dormant Commerce Clause. Accordingly, the Commerce Clause is both an express grant of power to Congress and an implicit limit on the power of state and local government. *See Comptroller of the Treasury of Maryland v. Wynne*, __ U.S. __, 135 S.Ct. 1787, 1794, 191 L.Ed.2d 813 (2015).

{¶ 60} The majority interprets Congress's silence as authorizing Ohio to tax a corporation based solely on its Internet sales in Ohio when it has no physical presence in the state and the only connection it has with Ohio is Ohioans' purchases of its products. This reasoning runs counter to the United States Supreme Court's reasoning in *Quill Corp. v. North Dakota*, which is the last word from that court on this issue. 504 U.S. 298, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992).

{¶ 61} While the shifting seats on the high court might present the possibility the court will overturn its past precedents on the dormant Commerce Clause and hold that a business-privilege tax does not violate the dormant Commerce Clause, until that day, we are bound by the court's prior holdings and by Congress's inaction on this issue, given its power to regulate interstate commerce. *See Quill* at 298; *see also Tyler Pipe Industries, Inc. v. Washington State Dept. of Revenue*, 483 U.S. 232, 107 S.Ct. 2810, 97 L.Ed.2d 199 (1987).

Therefore, I would remand this matter to the Board of Tax Appeals ("BTA") for a determination of whether appellant, Crutchfield Corporation, has a physical presence in Ohio under *Quill*.

## I. Analysis

{¶ 62} Before delving into the specifics of this case, it is worth summarizing the constitutional framework at issue. Congress has the power to regulate commerce among the states; this includes the power to authorize the states to place burdens on interstate commerce. *Prudential Ins. Co. v. Benjamin*, 328 U.S. 408, 434, 66 S.Ct. 1142, 90 L.Ed. 1342 (1946). Absent such congressional approval, a state law violates the dormant Commerce Clause if it imposes an undue burden on both out-of-state and local producers engaged in interstate activities or if it treats out-of-state producers less favorably than their local competitors. *See, e.g., Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970); *Philadelphia v. New Jersey*, 437 U.S. 617, 624, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978); *Granholm v. Heald*, 544 U.S. 460, 472, 125 S.Ct. 1885, 161 L.Ed.2d 796 (2005). As we noted earlier this year, the United States Supreme Court has described the purpose of the dormant Commerce Clause as follows:

> "By prohibiting States from discriminating against or imposing excessive burdens on interstate commerce without congressional approval, [the dormant Commerce Clause] strikes at one of the chief evils that led to the adoption of the Constitution, namely, state tariffs and other laws that burdened interstate commerce."

(Brackets sic.) *Corrigan v. Testa*, __ Ohio St.3d __, 2016-Ohio-2805, __ N.E.3d __ ¶ 16, quoting *Wynne*, __ U.S. __, 135 S.Ct. at 1794, 191 L.Ed.2d 813.

{¶ 63} The Commerce Clause grants Congress the authority to regulate (1)

"the use of the channels of interstate commerce," (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities," and (3) "those activities having a substantial relation to interstate commerce, * * * *i.e.*, those activities that substantially affect interstate commerce." *United States v. Lopez*, 514 U.S. 549, 558-559, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). Federal circuit courts that have examined the issue agree that the Internet is a "channel" or "instrumentality" of interstate commerce. *See, e.g., United States v. Panfil*, 338 F.3d 1299, 1300 (11th Cir.2003); *United States v. Extreme Assocs., Inc.*, 431 F.3d 150, 161 (3d Cir.2005).

**{¶ 64}** The majority relies on the absence of United States Supreme Court decisions directly on point and treats this case as though it exists in a vacuum. It does not. And the majority's approach ignores the clues that we do have—all of which point to a business's physical presence in the state as the lynchpin of a substantial nexus between the business and the state. The most relevant cases are those dealing with sales and use taxes—*Quill*, 504 U.S. 298, 112 S.Ct. 1904, 119 L.Ed.2d 91, is the latest—and a case evaluating a similar gross-receipts tax, *Tyler Pipe*, 483 U.S. 232, 107 S.Ct. 2810, 97 L.Ed.2d 199. In all those cases, the businesses subject to the taxes had a physical presence in the taxing jurisdictions, and the majority should not ignore these cases.

**{¶ 65}** In *Quill*, the United States Supreme Court reaffirmed the *Bellas Hess* rule that the physical presence of the business established the necessary substantial nexus with the state when a state sought to impose use-tax-collection duties on mail-order sellers. *Quill* at 311, citing *Natl. Bellas Hess, Inc. v. Illinois Dept. of Revenue*, 386 U.S. 753, 87 S.Ct. 1389, 18 L.Ed.2d 505 (1967). The companies in *Quill* and *Bellas Hess* were solely mail-order companies that had no in-state physical locations and made contact with the states only by delivering goods through the mail and other common carriers. *Quill* at 302; *Bellas Hess* at

753-754. The *Bellas Hess* court created a bright-line rule that a state can require an out-of-state mail-order retailer to collect use taxes only when the retailer has a physical presence in the state. *Bellas Hess* at 757-758. The court noted, however, that the physical presence could be satisfied by local agents, who need not even be regular employees. *Id*., citing *Scripto, Inc. v. Carson*, 362 U.S. 207, 80 S.Ct. 619, 4 L.Ed.2d 660 (1960) (ten independent brokers sufficient for state to mandate use-tax collection). Nevertheless, those agents must be physically in the state to provide the substantial nexus necessary to defeat a taxpayer's Commerce Clause challenge.

{¶ 66} In the years after *Quill*, this court applied *Quill*, holding that an out-of-state company selling merchandise by direct mail to Ohioans did not establish a substantial nexus with the state because the company did not have a physical presence in Ohio and, therefore, Ohio could not force the out-of-state company to collect use taxes. *SFA Folio Collections, Inc. v. Tracy*, 73 Ohio St.3d 119, 123, 652 N.E.2d 693 (1995).

{¶ 67} I see no evidence that gross-receipts taxes are meaningfully different from use taxes for substantial-nexus purposes, and I view *Tyler Pipe*'s reliance on physical presence as more indicative of a requirement than an option. That opinion suggests as much by its lack of other nexus-producing details. There, the Supreme Court evaluated a gross-receipts tax (which I view as similar to business-privilege taxes like the CAT—both are measured by gross receipts), specifically concerning the sufficiency of Tyler Pipe's connection with the state to justify its imposition of the tax on the company's sales. 483 U.S. at 249-250, 107 S.Ct. 2810, 97 L.Ed.2d 199. The company had no office, property, or employees residing in the state. *Id*. at 249. Moreover, it manufactured all its pipe products out of state. *Id*. As the court noted, however, Tyler Pipe had an independent sales representative located in the state. *Id*. That independent contractor (and its salespeople) did enough local work to maintain Tyler Pipe's market and protect

28

its interests that it constituted a sufficient nexus with the state and justified the state's gross-receipts tax. *Id*. at 250, citing *Scripto* at 211.

**{¶ 68}** Nowhere in *Tyler Pipe* did the Supreme Court indicate that anything less than a third-party contractor operating within a taxing state on a taxpayer's behalf would satisfy the substantial-nexus requirement established in *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977). Yet the majority brushes *Tyler Pipe* aside, concluding that "it is unwarranted to leap from the principle that physical presence is a sufficient condition for imposing a tax to the logically distinct proposition that physical presence is a *necessary* condition to impose the tax." (Emphasis sic.) Majority opinion at ¶ __. It is the majority that takes an unwarranted leap in concluding that physical presence is merely sufficient, not necessary. Absent evidence that an expansion is warranted—and we have none—I will not ignore the mandates of federal constitutional law.

**{¶ 69}** The majority's reliance on state-court decisions that speculate as to the unlikelihood of the Supreme Court expanding *Quill*'s physical-presence requirement beyond sales and use taxes is unwarranted. Half of those cases involved physical presence, and the other half fell under a different type of tax that the Supreme Court has not held to require physical presence. To be sure, even this court has speculated about the physical-presence requirement. *See Couchot v. State Lottery Comm.*, 74 Ohio St.3d 417, 425, 659 N.E.2d 1225 (1996). *Couchot*, however, involved an out-of-state resident who bought an Ohio lottery ticket in Ohio and redeemed it in Columbus. That is quintessential physical-presence-based substantial nexus. In *KFC Corp. v. Iowa Dept. of Revenue*, a corporation licensed intangible intellectual property for use by its in-state franchisees. 792 N.W.2d 308 (Iowa 2010). Although the corporation lacked property or employees in the state, the Iowa Supreme Court concluded that the franchisees' physical presence in the state coupled with the value of the

intangibles sufficiently localized KFC's income from the franchisees' transactions in the state such that Iowa could tax it. *Id*. at 323. In support of this conclusion, the *KFC* court cited *Internatl. Harvester Co. v. Wisconsin Dept. of Taxation*, 322 U.S. 435, 441-442, 64 S.Ct. 1060, 88 L.Ed. 1373 (1944) ("A state may tax such part of the income of a non-resident as is fairly attributable * * * to events or transactions which, occurring there, are subject to state regulation and which are within the protection of the state and entitled to the numerous other benefits which it confers"). It is true that *Internatl. Harvester* was a due-process case, but the Supreme Court rendered that decision at a time when due process and the Commerce Clause were considered coextensive. *See id*. at 444; *Quill*, 504 U.S. at 305, 112 S.Ct. 1904, 119 L.Ed.2d 91.

{¶ 70} The other two decisions upon which the majority relies in questioning the physical-presence requirement are inapplicable here because they deal with a type of tax specific to banks—financial-institution excise taxes. *See Capital One Bank v. Commr. of Revenue*, 453 Mass. 1, 899 N.E.2d 76 (2009); *MBNA Am. Bank, N.A. v. Indiana Dept. of State Revenue*, 895 N.E.2d 140 (Ind.Tax 2008). The Supreme Court has never addressed, much less stated, a physical-presence requirement for financial-institution excise taxes. Therefore, the state courts' reasoning in these financial-institution-tax cases is not applicable to the case at bar.

{¶ 71} Because half of them involve sufficient physical presence and the other half involve an irrelevant tax on financial institutions, these opinions of other state courts criticizing the physical-presence rule as constitutionally outmoded for substantial-nexus purposes are not persuasive.

{¶ 72} The majority's citations to state-court decisions addressing gross-receipts taxes are a step in the right direction but provide no sounder a foundation for its decision today. Interestingly, the majority places great weight on the fact that each case involved a physical presence in the state sufficient to uphold

imposition of the tax. It then somehow reads all these state-court physical-presence cases to mean that "there is no reason for us to view those decisions as authority for the proposition that physical presence would have been a necessary condition as well." Majority opinion at ¶ 51. That extrapolation is not well founded.

{¶ 73} The physical-presence requirement is grounded in the reasoning that the dormant Commerce Clause is designed to prevent regulation and taxation from being an undue burden on interstate commerce.

> Undue burdens on interstate commerce may be avoided not only by a case-by-case evaluation of the actual burdens imposed by particular regulations or taxes, but also, in some situations, by the demarcation of a discrete realm of commercial activity that is free from interstate taxation.

*Quill*, 504 U.S. at 314-315, 112 S.Ct. 1904, 119 L.Ed.2d 91. This reasoning is not limited to sales and use taxes, and the language of *Quill* should be applied as written—applying to the "discrete realm of commercial activity" at issue in the case, which was commercial activity involving companies without a physical presence in the taxing state. *Id*. This reasoning is in line with common sense because these companies should not be forced to comply with Ohio's CAT based solely on the fact that Ohioans choose to buy products from them. Under the CAT as construed by the majority, a business could be forced to pay Ohio taxes if just one Ohioan spent more than $500,000 on its products. It is easy to imagine an Ohio manufacturing business ordering one machine from an out-of-state business, and that would trigger a requirement for that business to comply with the CAT. The business could have no other connection with the state, but Ohio could drag it into Ohio's taxing scheme based on one act of interstate commerce.

This is an undue burden on interstate commerce of the sort that the *Quill* court was attempting to avoid.

{¶ 74} I recognize that *Quill* might be overturned by the Supreme Court or abrogated by an act of Congress. Only two members of the *Quill* court remain on the bench—Justices Kennedy and Thomas—and Justice Kennedy has expressed his opinion that the case should be revisited in light of the technological changes caused by the proliferation of online retailers. *Direct Marketing Assn. v. Brohl*, __ U.S. __, 135 S.Ct. 1124, 1135, 191 L.Ed.2d 97 (2015) (Kennedy, J., concurring) ("Given these changes in technology and consumer sophistication, it is unwise to delay any longer a reconsideration of the Court's holding in *Quill*"). Nevertheless, *Quill* is the law of the land, and it must be followed.

{¶ 75} Congress could also authorize the states to impose taxes on out-of-state retailers like Crutchfield. In his concurring opinion in *Quill*, which was joined by Justices Kennedy and Thomas, Justice Scalia wisely remarked that whatever constitutional rule the court fashioned based on the dormant Commerce Clause was subject to revision by Congress: "Congress has the final say over regulation of interstate commerce * * *. We have long recognized that the doctrine of *stare decisis* has 'special force' where 'Congress remains free to alter what we have done.' " *Quill* at 320 (Scalia, J., concurring), quoting *Patterson v. McLean Credit Union*, 491 U.S. 164, 172-173, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). Proposed legislation is pending in Congress that would abrogate the *Quill* rule and permit states to require online retailers to collect sales taxes. *See Marketplace Fairness Act of 2015*, S.698, 114th Congress (introduced in Senate Mar. 10, 2015). Congress has the power and authority to regulate interstate commerce to ensure that there is an equal playing field between in-state and out-of-state companies.

{¶ 76} Currently, Ohio responds to this gap in taxation by imposing the use tax on purchases that are not subject to sales tax. *See* R.C. 5741.12(B).

Ohioans are asked to voluntarily report on line 12 of the personal-income-tax Form 1040 the amount of out-of-state purchases made over the Internet that are not subject to sales tax. Ohio Department of Taxation, 2015 Universal IT 1040 Individual Income Tax Return, http://www.tax.ohio.gov/Portals/0/forms/ohio_individual/individual/2015/PIT_IT1040.pdf (accessed Oct. 21, 2016). If Ohioans report out-of-state purchases, they must pay a use tax at a rate equal to the sales-tax rate in their county. Ohio Department of Taxation, *Ohio 2015 Instructions for Filing Personal Income Tax* 17, http://www.tax.ohio.gov/portals/0/forms/ohio_individual/individual/2015/PIT_IT 1040_Booklet.pdf (accessed Oct. 21, 2016). Just as it would require an act of Congress to require out-of-state retailers to collect sales taxes, federal legislation is necessary before Ohio can impose the CAT on out-of-state businesses. It is not the role of this court to bless a state's attempt to regulate interstate commerce through a taxing scheme just because Congress has been silent.

{¶ 77} I understand and am sympathetic to the arguments made by amici curiae Ohio Manufacturers' Association, Ohio State Medical Association, Ohio Dental Association, and Ohio Chemistry Technology Council because "they have a critical and substantial interest in ensuring that this tax is applied fairly and equitably." However, the desire to "fairly" apply the CAT to out-of-state companies cannot supersede binding United States Supreme Court precedent, *see Complete Auto Transit*, 430 U.S. at 274, 97 S.Ct. 1076, 51 L.Ed.2d 326, and *Quill*, 504 U.S. at 298, 112 S.Ct. 1904, 119 L.Ed.2d 91. I disagree with amici curiae when they state that none of the Supreme Court's decisions "state that a physical presence was the *sine qua none* [sic] for finding that a substantial nexus existed." As stated above, the reasoning that the Supreme Court used in *Quill* and *Tyler Pipe* to determine whether a substantial nexus exists between an out-of-state business and a taxing state turns on whether or not the out-of-state business has a physical presence in the taxing state.

**{¶ 78}** As for the BTA's assertion that Crutchfield's computerized connections with Ohio consumers constitutes physical presence in this state, the BTA never made a factual determination that Crutchfield has a physical presence in Ohio. On the contrary, the BTA concluded that "under the plain language set forth therein, the pertinent CAT statutes do not impose such an in-state presence requirement." Since it did not believe that in-state physical presence was a requirement, the BTA did not make a finding as to Crutchfield's in-state presence. "The BTA is responsible for determining factual issues * * *." *Vandalia-Butler City Schools Bd. of Edn. v. Montgomery Cty. Bd. of Revision*, 130 Ohio St.3d 291, 2011-Ohio-5078, 958 N.E.2d 131, ¶ 12. In my view, it is the BTA's responsibility to evaluate the evidence and make a factual determination whether Crutchfield has a physical presence in Ohio.

## II. Conclusion

**{¶ 79}** While I am sympathetic to Ohio-based businesses that are forced to pay a business-privilege tax such as the CAT, I nevertheless must follow the law as it is exists today. The power to regulate interstate commerce rests exclusively with Congress under Article I, Section 8, Clause 3 of the United States Constitution. Because the last word from the United States Supreme Court is that a state's ability to tax an out-of-state business depends on a substantial nexus created by a physical presence, *Quill Corp. v. North Dakota*, 504 U.S. 298, 112 S.Ct. 1904, 119 L.Ed.2d 91; *see also Tyler Pipe Industries, Inc. v. Washington State Dept. of Revenue*, 483 U.S. 232, 107 S.Ct. 2810, 97 L.Ed.2d 199, I must dissent. I would remand the matter to the BTA for a determination of physical presence under *Quill*.

LANZINGER, J., concurs in the foregoing opinion.

———————————

Brann & Isaacson, Martin I. Eisenstein, David W. Bertoni, and Matthew P. Schaefer; and Baker Hostetler and Edward J. Bernert, for appellant and cross-appellee.

Michael DeWine, Attorney General, and Daniel W. Fausey and Christine Mesirow, Assistant Attorneys General, for appellee and cross-appellant.

Macey, Wilenski & Hennings, L.L.C., and Peter G. Stathopoulos; and Robert Alt, urging reversal for amici curiae Buckeye Institute for Public Policy Solutions, Mackinac Center for Public Policy, NetChoice, and American Catalog Mailers Association, Inc.

Fredrick Nicely and Nikki Dobay, urging reversal for amicus curiae Council on State Taxation.

Goldstein & Russell, P.C., Eric F. Citron, and Thomas C. Goldstein, urging affirmance for amici curiae National Governors Association, National Conference of State Legislatures, Council of State Governments, National Association of Counties, National League of Cities, U.S. Conference of Mayors, International City/County Management Association, International Municipal Lawyers Association, and Government Finance Officers Association.

Bricker & Eckler, L.L.P., Mark A. Engel, and Anne Marie Sferra, urging affirmance for amici curiae Ohio Manufacturers' Association, Ohio State Medical Association, Ohio Dental Association, and Ohio Chemistry Technology Council.

Bruce Fort, urging affirmance for amicus curiae Multistate Tax Commission.

_____